**UNITED STATES of America, Appellee,**

v.

**Arlene SHERER, Appellant.**

**No. 81–1008.**

United States Court of Appeals,
Eighth Circuit.

Submitted May 22, 1981.

Decided July 9, 1981.

Barry H. Evenchick, Livingston, N. J., for appellant; Craig V. O'Connor, Morristown, on the brief.

Terry L. Pechota, U. S. Atty., John J. Ulrich, Asst. U. S. Atty., Sioux Falls, S. D., for appellee.

Before GIBSON, Senior Circuit Judge, ARNOLD, Circuit Judge, and McMANUS,[*] District Judge.

ARNOLD, Circuit Judge.

Arlene Sherer, a New Jersey psychiatrist, was convicted of three counts of mail fraud against the State of South Dakota, in violation of 18 U.S.C. § 1341. The District Court[1] sentenced Dr. Sherer to a $1,000 fine and 30 days imprisonment on Count I, with the recommendation that she be released during working hours on weekdays. On Counts II and III the defendant was given probation and a total additional fine of $2,000.00. As a condition of probation, defendant was ordered to make restitution to the State of South Dakota in the amount of $900. She now appeals her conviction, alleging that she was deprived of her right to a fair trial by inflammatory comments by the Assistant United States Attorney during closing argument, by the introduction of evidence of "other crimes," and by the court's failure to charge the jury on the defense of good faith. We affirm.

Dr. Sherer was hired by the State of South Dakota under an adoption-subsidy plan whereby the State paid for treatment of all medical conditions existing at the time a child was placed for adoption. Linda Caverly, a ward of the state, was adopted by Mr. and Mrs. James Caverly in early 1979. In March of 1979 she experienced emotional problems, and the adoption agency referred the Caverlys to Dr. Sherer, a

specialist in the treatment of emotional disorders of children and adolescents. The Caverlys and Linda met with Dr. Sherer on March 26, 1979, to discuss Linda's treatment plan. According to the Caverlys' testimony at trial, they agreed on a once-a-week treatment program. Dr. Sherer testified, however, that they all agreed that Linda would have two appointments each week.

Department of Social Services regulations required that Dr. Sherer, as the provider of services, submit for billing purposes each month a form, designated as CS–101, and a statement of services on her letterhead stationery. Mrs. Connie Irwin of the Department of Social Services testified as to each billing form and letterhead statement Dr. Sherer mailed to her. Using Linda's chart, Dr. Sherer testified that she saw Linda 32 times and that Linda did not show up for scheduled appointments on 11 dates. Mrs. Caverly, using her kitchen calendar, testified that Dr. Sherer saw Linda only 14 times. Mr. Caverly and three other witnesses testified that Linda was at camp or on family vacations on four of the dates that Dr. Sherer claimed to have had sessions with her.

The investigation into Dr. Sherer's billing was initiated by Mr. Caverly, an F.B.I. agent, who noticed a discrepancy between the dates billed for April and the dates on which, according to him, Linda had seen Dr. Sherer. He alerted Mrs. Irwin in South Dakota and his superiors in the F.B.I. In spite of Mrs. Irwin's knowledge of the investigation, she continued to accept Dr. Sherer's statements, and Dr. Sherer was paid for the months of March, April, and May.

### Improper Argument

During his closing argument, the Assistant United States Attorney stated:

MR. ULRICH: It's my duty as a prosecutor to look at evidence and to bring a case based on sufficient evidence, and I'd just like to assure you that the way our office

---

[*] The Hon. Edward J. McManus, Chief Judge, United States District Court for the Northern District of Iowa, sitting by designation.

[1] The Hon. Fred J. Nichol, Senior United States District Judge for the District of South Dakota.

operates is with diligence and with honesty and we're not out in the business of prosecuting where the evidence does not warrant the case to be indicted.

Now, ...

MR. HOY: Now wait a minute. This is improper argument. Arguing what your office does or might not do has no more relevance than what mine might do or not do.

THE COURT: Yes, I'm inclined to agree with counsel. I'm going to sustain the objection.

Later in his rebuttal argument the Assistant United States Attorney stated that:

[It] is conceivable that even the best surgeon could be guilty of crimes. In fact, some past Attorney Generals [sic] have entered pleas of guilty to criminal conduct. We've seen in the recent past, even Presidents step down in the face of criminal charges, ... I asked you early on, do you believe that there's anybody that is above the law, and I got a response from you that there was no one here that had that belief.

Defense counsel did not object to this remark.

Defendant characterizes the first statement as suggesting that the government prosecutes only the guilty. She characterizes the second statement as an inflammatory and irrelevant comparison of herself to Richard Nixon and John Mitchell, with the intended effect of inflaming the passions of the jury. The government seeks to justify its statements as a fair reply to remarks made by defense counsel in his closing argument. In his summation to the jury, defense counsel argued that the government was trying to make a "federal case" out of what was merely a billing dispute between a doctor and her patient. He suggested that the average person would not get any action if he walked into the United States Attorney's office and said that his doctor was overbilling him. He further argued that the case was not appropriate for a federal court and that the State of South Dakota had plenty of courts and lawyers. He concluded:

I have spent some time in this courtroom, and I have never ever in my life felt the power of the federal government and the using of the Courts and all the time and energy here to involve themselves in a private matter between a doctor and a patient in New Jersey, that should be handled right there.

We note initially that although defendant is now arguing that the Assistant United States Attorney's remarks were so inflammatory as to deprive her of a fair trial, there was no request for a mistrial when either of the remarks was made, and defendant did not even object to the implied comparison to President Nixon and Attorney General Mitchell.

Several factors lead us to the conclusion that any error committed by the government in closing argument was harmless when viewed in the context of the complete trial. An important factor to consider in determining whether a closing argument is so prejudicial as to require reversal of the conviction is the amount of evidence indicating defendant's guilt. "If the evidence of guilt is overwhelming, an improper argument is less likely to affect the jury verdict .... On the contrary, if the evidence of guilt is weak or tenuous, the existence of prejudice is more easily assumed." *United States v. Splain*, 545 F.2d 1131, 1135 (8th Cir. 1976). "Reversal is in order only if the court determines that the jury verdict could reasonabl[y] have been affected by the argument." *Ibid.*

In the present case the testimony of Mr. and Mrs. Caverly and three other witnesses was strong evidence that Linda Caverly was not treated by Dr. Sherer on at least two-thirds of the dates she claimed to have seen Linda. Had Dr. Sherer explicitly raised a defense of mistake or accident, the evidence against her might have been less convincing as to the question of her intent to defraud. She testified, however, that she in fact treated Linda on the dates for which she billed the State, and the jury was left with a pure credibility determination. The jury had to choose whether to believe Dr. Sherer's testimony that Linda was in

her office on various dates, or the Caverlys' and other witnesses' testimony that she was at home, at camp, on vacation, or at the circus in New York City. This was hardly a case based on "weak or tenuous" evidence. While we agree with defendant that both challenged statements were possibly improper argument,[2] the chance is remote that the jury verdict in this case was influenced by the Assistant United States Attorney's statements.

■ Since there was no objection to the Assistant United States Attorney's second statement, we ask only if it was so prejudicial as to have "affected substantial rights resulting in a miscarriage of justice." *United States v. Big Crow*, 523 F.2d 955, 960–61 (8th Cir. 1975), *cert. denied*, 424 U.S. 920, 96 S.Ct. 1126, 47 L.Ed.2d 327 (1976). Having found that the statement would not merit reversal even if the point had been properly preserved for review, we must conclude that there was no plain error.

Jury Instruction on Good Faith

■ The standard employed by this Court in reviewing the adequacy of instructions is whether the instructions, when taken as a whole, adequately advise the jury of the essential elements of the offenses charged and the burden of proof required of the government. *United States v. Brown*, 540 F.2d 364, 380–81 (8th Cir. 1976). No instruction was requested on the issue of the defendant's good faith, and none was given. Good faith is a complete defense to a charge of mail fraud, and a defendant is entitled to such a charge if there is evidence to support the theory. *United States v.*

*Ammons*, 464 F.2d 414, 417 (8th Cir. 1972), *cert. denied*, 409 U.S. 988, 93 S.Ct. 343, 34 L.Ed.2d 253 (1972).

Dr. Sherer did not claim that the alleged acts of mail fraud were the result of some mistake in billing procedure or inadvertence on her part or by one of her employees. For each month charged in the indictment, she had submitted a statement on her office letterhead which she personally signed. Her defense was clearly stated in her testimony at trial when she testified that she actually saw Linda in her office on the dates for which she charged, or that, on a few occasions, Linda did not show up for scheduled appointments. The jury had a clear choice of either believing Dr. Sherer's testimony or that of the government's witnesses. The only conceivable good-faith theory which the jury could have inferred from Dr. Sherer's testimony is that Dr. Sherer really believed that she had seen Linda on dates Linda was not in her office. That theory was not argued by defense counsel, whose major theme was that the case was not a proper one for federal prosecution.

■ The court instructed the jury as follows:

Now, three essential elements are required to be proved in order to establish the offense charged in the indictment:

First, the act or acts of having devised, or having intended to devise, a scheme or artifice to defraud or to attempt to defraud, the Department of Social Services for the State of South Dakota, including its branch office in Brookings, South Dakota, as charged;

2. The Assistant United States Attorney's statement about the honesty and diligence of his office was probably fair reply to the defense attorney's closing argument. While we do not condone statements of personal belief in the guilt of the defendant by a prosecutor, this statement did not rise to that level. Compare the prosecutor's statement in *United States v. Splain, supra*: "We are trying to convict Bobby Splain because he committed a crime and we are convinced of that or we wouldn't be trying him." 545 F.2d at 1134. In *Splain* this Court affirmed the conviction in spite of the statement of guilt because of overwhelming evi-

dence of guilt and defendant's failure to object to the argument at trial. Because we affirmed Splain's conviction in spite of the patently improper argument, that case, which is relied upon by defendant, presents no basis for reversal of Dr. Sherer's conviction.

The other statement, which implicitly compares Dr. Sherer with disgraced high government officials, is irrelevant and should not have been made. Since defendant did not object, however, she passed up the chance to correct any potentially harmful effect the statement might have on the jury. See *id.* at 1136.

Second, the act or acts of placing, or causing to be placed, in an authorized depository for mail matter a letter intended to be sent or delivered by the Post Office Department, as charged; and

Third, the act or acts of so using or causing the use of the United States Mails willfully, and with the specific intent to carry out some essential step in the execution of said scheme or artifice to defraud, or to attempt to do so, as charged.

    \*    \*    \*    \*    \*    \*

To act with "intent to defraud" means to act knowingly and with the specific intent to deceive, ordinarily for the purpose of either causing some financial loss to another, or bringing about some financial gain to oneself.

Intent ordinarily may not be proved directly, because there is no way of fathoming or scrutinizing the operations of the human mind. But you may infer the defendant's intent from the surrounding circumstances. You may consider any statements made and done or omitted by the defendant, and all other facts and circumstances in evidence which indicate his or her state of mind.

These instructions taken as a whole are adequate for the purpose of any good-faith defense the jury might have inferred from Dr. Sherer's testimony. The essence of a good-faith defense is that one who acts with honest intentions cannot be convicted of a crime requiring fraudulent intent. The jury was instructed that it must find intent to defraud beyond a reasonable doubt in order to convict. It was also told that a

defendant cannot be convicted for an act done because of mistake, accident, or other innocent reason.[3] Under the circumstances of this case, where no instruction on "good faith" as such was requested,[4] there was no reversible error in the instructions given.

### "Other Crimes" Evidence

Dr. Sherer also assigns error in the admission of evidence of defendant's billings for the months of August and September. These months were included in the original indictment but were dropped from the superseding indictment under which Dr. Sherer was tried. Pursuant to Fed.R.Evid. 404(b) the government's witnesses were allowed to testify about Linda's treatment schedule for those months. Defense counsel objected. Twice during the trial and again in the jury instructions the court told the jury that there was no charge of erroneous or fraudulent billing for the months of August and September. It further told the jury that the evidence was allowed not as proof that defendant did anything wrong on those dates, but as evidence of motive, opportunity, intent, plan, or scheme.

■ The test for admissibility of other acts under Rule 404(b) is set out in *United States v. Lewis*, 423 F.2d 457 (8th Cir. 1970), *cert. denied*, 400 U.S. 905, 91 S.Ct. 146, 27 L.Ed.2d 142 (1970).[5] Before the evidence can be admitted, however, it must be shown that an issue on which other-crime evidence may be received is raised, the proffered evidence is relevant to that issue, the evidence is clear and convincing, and the probative worth outweighs the probable preju-

---

**3.** Earlier in its instructions the court had defined "willfully" as doing an act "voluntarily and intentionally, and with the specific intent to do something the law forbids ... with the purpose either to disobey or to disregard the law." The jury was further instructed that to do an act "knowingly" is to do it voluntarily and intentionally and not because of mistake or accident or innocent reason and that knowing action is required to "insure that no one will be convicted for an act done because of mistake, or accident, or other innocent reason."

**4.** Upon completion of instructions to the jury the court asked defense counsel if he had any

objections to any of the instructions. The answer was no. Nor did he voice any request for additional instructions.

**5.** In *Lewis*, 423 F.2d at 459, we held that "[e]vidence of prior conduct which may constitute a separate crime is admissible and relevant to (1) motive, (2) intent, (3) the absence of mistake or accident, (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one stands to establish the other, and (5) the identity of the person charged with the commission of the crime on trial."

dicial impact. *United States v. Clemons*, 503 F.2d 486, 489 (8th Cir. 1974). The billings for August and September meet each of these tests. The issue of intent had been necessarily raised by the plea of not guilty, and the additional months' billings were relevant to show intent, plan, or scheme. There was certainly clear and convincing evidence that false billings were sent. (Dr. Sherer denied any falsehood, but credibility determinations are of course for the jury.) There was little unfairly prejudicial impact, particularly in light of the court's repeated and careful admonitions to the jury. There was no abuse of discretion in the admission of the evidence concerning the months of August and September. The judgment is affirmed.