# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3417

_____

United States of America,

Appellee,

v.

Darwin G. Rice,

Appellant.

\* \* \* \* \* \* \* \* \* \* \*

Appeal from the United States
District Court for the Southern
District of Iowa.

_____

Submitted: February 16, 2006
Filed: May 30, 2006

_____

Before WOLLMAN, ARNOLD and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

A jury found Darwin G. Rice guilty of making a material false statement concerning a matter within the jurisdiction of the Government of the United States in violation of 18 U.S.C. § 1001(a) and converting property mortgaged or pledged to a farm credit agency in violation of 18 U.S.C. § 658. Following the verdicts, Rice moved for a judgment of acquittal and for a new trial. After the motions were denied, Rice moved to vacate and set aside the jury verdict and for a hearing in the nature of

*coram nobis*, claiming that his counsel was ineffective. The district court[1] also denied this motion. Rice appeals. We affirm.

## I.     BACKGROUND

Rice is a farmer in Greene County, Iowa. In early 2000, Rice applied for a loan from the Farm Service Agency ("FSA"), an agency of the Department of Agriculture that administers loans to farmers. FSA rejected Rice's initial application. In June 2000, Rice sought reconsideration of FSA's decision. As part of his renewed loan application, in July 2000, Rice submitted a "farm and home plan" to FSA. In the plan, Rice declared his assets, debts, crop plans for 2000, anticipated income and debt repayment plan. Based upon Rice's farm and home plan, as well as his subsequent agreement to pledge certain collateral including his crop year 2000 soybeans to ensure repayment, FSA approved his application and loaned Rice $200,000.

Although Rice disputed the testimony, a Government witness testified at trial that, during an October 2000 loan closing attended by Rice and FSA employees, Rice told FSA that his financial circumstances had not materially changed since he executed his July 2000 farm and home plan, even though Rice sold and disposed of his crop year 2000 soybeans either the day before, or on the day of, the loan closing. FSA employees testified that FSA would not have closed the loan had it known that Rice had liquidated his soybeans before closing. Based upon his representation that his financial circumstances had not materially changed, the Government charged Rice with making a false statement in violation of 18 U.S.C. § 1001.

---

[1]The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa.

As part of his agreement with FSA, the proceeds of Rice's $200,000 loan were also pledged to FSA as security for the loan and placed in a supervised account from which funds could be withdrawn only with written FSA approval. Beginning in October 2000, Rice made approved withdrawals of over $172,000 from the supervised account. Each time, Rice obtained the countersignature of an FSA representative to authorize the withdrawal. However, in 2001, Rice attempted to withdraw the remaining funds from the supervised account without FSA approval. Rice initially attempted to withdraw the funds from a bank in Fort Dodge, Iowa, but the Fort Dodge branch refused to give Rice the funds. When denying Rice's request, employees of the Fort Dodge branch told Rice he needed FSA approval. Rather than seek FSA authorization for the withdrawal, Rice tried another branch of the same bank in West Des Moines, Iowa. This time, the bank allowed Rice to withdraw the remaining $27,582.91 from the account. Rice then deposited the funds into a personal account at another bank. Despite subsequent requests from FSA and the bank, Rice failed to return the pledged funds. Based upon his unapproved withdrawal of pledged funds from the supervised account, the Government charged Rice with converting property pledged to FSA in violation of 18 U.S.C. § 658.

The jury convicted Rice on both counts. Rice moved orally for a judgment of acquittal, but his motion was denied. Rice later moved in writing for a new trial, claiming that the jury's verdicts were contrary to the weight of the evidence. Following complete briefing, the district court denied Rice's motion. Rice then moved to vacate and set aside the jury verdicts and requested a "hearing in nature of *coram nobis*." Rice's motion to vacate claimed that he received ineffective assistance of counsel at trial. The district court held an evidentiary hearing concerning Rice's ineffective assistance of counsel claim at which only Rice testified. After the hearing and additional briefing, the district court also denied Rice's motion to set aside the verdict. The district court subsequently entered judgment against Rice, ordering restitution and sentencing Rice to 60 months' probation on each count to be served concurrently.

## II.    DISCUSSION

On appeal, Rice contends that: (i) the evidence was insufficient to support the jury's verdict, requiring a judgment of acquittal, or, alternatively, the verdicts were contrary to the weight of the evidence, requiring a new trial; (ii) the district court plainly erred with respect to several evidentiary rulings and jury instructions; and (iii) his counsel was ineffective. We address each argument in turn.

### A.    Sufficiency and Weight of the Evidence

We review de novo the denial of a motion for judgment of acquittal. *United States v. Funchess*, 422 F.3d 698, 700-01 (8th Cir. 2005). We will overturn a jury verdict based upon insufficiency of the evidence only if it is clear that no reasonable jury could have found guilt beyond a reasonable doubt. *United States v. Lee*, 356 F.3d 831, 836 (8th Cir. 2003); *United States v. Surratt*, 172 F.3d 559, 563 (8th Cir. 1999). In evaluating the evidence's sufficiency, we view "the evidence in the light most favorable to the government, resolving evidentiary conflicts in favor of the government, and accepting all reasonable inferences drawn from the evidence that support the jury's verdict." *United States v. Saunders*, 341 F.3d 809, 815 (8th Cir. 2003). Under this stringent standard, a verdict will be overturned "only in rare cases." *Lee*, 356 F.3d at 836.

To establish a violation of 18 U.S.C. § 1001, the Government must prove that: "(1) the defendant made a statement; (2) the statement was false, fictitious or fraudulent as the defendant knew; (3) the defendant made the statement knowingly and willfully; (4) the statement was within the jurisdiction of a federal agency; and (5) the statement was material." *United States v. Johnson*, 937 F.2d 392, 396 (8th Cir. 1991). To establish a violation of 18 U.S.C. § 658, the Government must prove that:

(1) the defendant knowingly concealed, removed, disposed of or converted the property described in the indictment; (2) the described property was "mortgaged or pledged to, or held by, the . . . Farmers Home Administration or [a] successor agency"; and (3) the defendant acted with intent to defraud the agency.[2] 18 U.S.C. § 658; *see also United States v. Porter*, 842 F.2d 1021, 1026 (8th Cir. 1988) .

With respect to the § 1001 count, Rice contends that there was insufficient evidence that he knew to be false his representation that there had been no "material changes" to his financial condition.[3] However, having reviewed the evidence in a light most favorable to the verdict, it is clear that a reasonable jury could conclude beyond a reasonable doubt that Rice knew his statement to be false. The evidence showed that Rice knew that FSA's willingness to loan him money was a close question from the beginning. Consequently, even minor changes to Rice's financial condition were likely to constitute a material change to his financial circumstances. In support of his renewed loan application, Rice submitted documentation listing his crop year 2000 soybeans as an asset. Rice also granted FSA a security interest in the soybeans and promised FSA that it would receive some of the proceeds of the sale of

[2] FSA is a successor to the Farmers Home Administration. *See* Department of Agriculture Reorganization Act of 1994, § 226(b)(3), Pub. L. No. 103-354, 108 Stat. 3209, 3214 (1994).

[3] Rice does not challenge the sufficiency of the evidence showing that his statement was "material." There is no question that Rice's statement was material, as two FSA employees testified at trial that they would not have closed the loan had they known that Rice sold his soybeans because the sale diminished Rice's ability to repay the loan. *United States v. Whitaker*, 848 F.2d 914, 916 (8th Cir. 1988) (holding that a statement is material if it has a "natural tendency to influence or is . . . capable of influencing agency decision"). In any event, Rice need not have known that the statement was material for his conviction to be sustained. *United States v. Yermian*, 468 U.S. 63, 68-70 (1984) (holding that § 1001's "knowingly" requirement applies to its falsity element, but not to the other elements).

the soybeans in partial repayment of the loan. Nevertheless, despite having sold over $11,000 of the crop year 2000 soybeans the day before or morning of the loan closing, Rice told FSA employees that his financial condition had not materially changed since July. Having sold $11,000 of that collateral, Rice at a minimum placed $11,000 outside of the agreements pledging his soybeans as collateral. Thus, we believe a reasonable jury could conclude beyond a reasonable doubt that Rice knew his statement concerning changes to his financial condition was false.

With respect to the § 658 count, Rice contends that there was insufficient evidence proving that he removed or converted the pledged funds with any intent to defraud the Government. We disagree. The evidence showed that Rice unilaterally withdrew and used pledged funds that were purposely placed in a supervised account that required FSA authorization before withdrawing those funds. Rice knew he had to obtain FSA authorization because he was involved in the negotiations over the supervised account; because he executed a "Deposit Agreement" that specifically provided that "[n]o part of such deposit(s), account or money shall be withdrawn by [Rice] . . . except on the order of [Rice] and the counter-signature of a duly authorized representative of the government"; because he had four withdrawals approved previously; and because the first branch bank from which he sought to withdraw funds without approval told Rice he needed FSA approval. In a clear attempt to sidestep the requirement, Rice nevertheless sought out a different bank branch and withdrew the pledged funds. Moreover, Rice failed to return the funds after FSA and the bank told him he was legally proscribed from withdrawing the funds in the first place and requested their return. Based upon this evidence, we conclude that a reasonable jury could find beyond a reasonable doubt that Rice knowingly removed the funds pledged to FSA with the intent to defraud FSA.

Rice's arguments reduce to a contention that he acted in good faith, and he advances his argument largely by relying on his own testimony from trial. The jury

-6-

heard Rice's testimony and apparently chose not to believe him. In light of the sufficient evidence presented by the Government, we will not disturb the jury's findings. *See United States v. Cook*, 356 F.3d 913, 917 (8th Cir. 2004) ("These arguments did not persuade the jury, and are similarly unconvincing on appeal."); *United States v. Espino*, 317 F.3d 788, 794 (8th Cir. 2000) ("The jury . . . is always the ultimate arbiter of a witness's credibility, and this Court will not disturb the jury's findings in this regard.").

We also affirm the district court's denial of Rice's motion for a new trial based upon his argument that the verdicts were contrary to the weight of the evidence. We review a district court's denial of a motion for new trial for an abuse of discretion. *United States v. Zuavo*, 243 F.3d 428, 431 (8th Cir. 2001). Motions for new trials are generally disfavored, *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002), and will be granted only where "a serious miscarriage of justice may have occurred," *United States v. Huerta-Orozco*, 272 F.3d 561, 565 (8th Cir. 2001) (quotation omitted). In his brief, Rice's argument that the verdicts were contrary to the weight of the evidence simply incorporates his arguments regarding his motion for judgment of acquittal. We have addressed those arguments. We find no abuse of discretion in the district court's denial of Rice's motion for new trial. Accordingly, the district court properly denied Rice's motion for new trial.

### B.     Plain Error Claims

Rice contends that the district court erred with respect to certain evidentiary rulings and jury instructions, but Rice's trial counsel failed to object to any of the allegedly erroneous rulings at trial. Where trial counsel failed to raise an error at trial, this Court can correct the error where there is "(1) error, (2) that is plain, and (3) that affects substantial rights." *United States v. Pirani*, 406 F.3d 543, 550 (8th Cir. 2005) (quotation omitted). Critically, Rice "bears the burden of persuasion" with respect to

proving that his rights were prejudiced, and he normally can meet that requirement only by showing that the alleged error affected the case's outcome. *United States v. Olano*, 507 U.S. 725, 734 (1993). Where he has met his burden on the first three prongs, the Court "may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of the judicial proceedings." *Pirani*, 406 F.3d at 550 (quotation omitted). We are unpersuaded that the district court committed any plain error requiring a new trial.

### 1.     Evidentiary Rulings

Rice argues that the district court plainly erred when it admitted alleged "prior bad acts" evidence consisting of testimony suggesting that Rice was abusive toward FSA employees. A review of the record, however, makes it clear that, although the Government elicited some testimony on the subject, it was primarily Rice who elicited testimony and made arguments about the poor relationship he had with FSA. As Rice's trial counsel stated in his opening, "[t]he evidence is going to show that there was a long period of conflict between Darwin and various people at the FSA." Rice's trial counsel also elicited testimony that Rice was "volatile" when he dealt with FSA employees and that, because FSA employees were instructed not to contact Rice directly due to Rice's volatility by the attorney that represented Rice in the loan process, loan documents were changed without directly discussing the changes with Rice. Rice's trial counsel also explained at sidebar that "part of the defense is that the FSA engaged in fraud" and that "the FSA has not acted properly in this whole transaction" and has "an ax to grind." In closing argument, Rice's trial counsel again addressed the subject, stating that "this case is about misunderstanding, it's about anger, failure to communicate, and all those other problems, personality problems . . . that . . . infect relationships between people. That is what this case is about."

We cannot say that admission of such evidence constituted plain error that affected Rice's substantial rights or that the fairness of the proceeding was seriously affected simply because the district court allowed evidence on a subject that Rice repeatedly raised. *See, e.g.*, *United States v. Tulk*, 171 F.3d 596, 600 (8th Cir. 1999) (holding that plain error review of a prosecutor's use of a prior conviction was unavailable because the defendant's reference to his prior conviction in his opening statement "deliberately waived his right to object"); *United States v. York*, 830 F.2d 885, 892-93 (8th Cir. 1987) (per curiam) (holding that "there can be no reversible error" where a defendant affirmatively introduced his confession in an effort to bolster his claim of entrapment because his own use of the confession "opened the door") (quotation omitted).

Rice also argues that the district court committed plain error when it allowed hearsay evidence involving the activities of Rice's loan counsel, Rice's abusive behavior toward FSA employees and bank employees telling Rice he was not allowed to withdraw money from the supervised account without FSA consent. Having reviewed the record, we find that most of the statements that Rice claims were hearsay were not in fact hearsay, and we find no plain error with respect to the admission of any actual hearsay. Once again, Rice's own counsel elicited hearsay concerning Rice's loan counsel and Rice's abusive behavior. As such, for the reasons cited above, the admission of evidence on those subjects cannot constitute plain error requiring reversal. This is true even though the government also elicited a limited amount of testimony on the same subjects. *Tulk*, 171 F.3d at 600. Moreover, testimony describing the *conduct* of Rice's loan counsel and recounting the actual statements made by Rice's loan counsel do not constitute hearsay. Fed. R. Evid. 801(c) (generally, hearsay consists of an out-of-court *statement*); Fed. R. Evid. 801(d)(2)(C)-(D) (admissions of agents of party-opponent generally are not hearsay).

Finally, to the extent that hearsay was admitted concerning what bank employees told Rice, we do not find that its admission constitutes plain error. There was an overwhelming amount of other evidence—testimony from FSA employees,

agreements signed by Rice and cancelled checks reflecting that Rice previously obtained approval before withdrawing funds—showing that Rice well knew that he needed FSA approval before withdrawing funds. As such, the introduction of limited hearsay concerning what bank employees told Rice did not affect the outcome of the case or Rice's substantial rights.

## 2. Jury Instructions

Rice contends that the district court erroneously failed to give jury instructions defining "knowingly" or "knowledge" and "intent to defraud" and failed to instruct the jury on a good faith or advice of counsel defense. Jury instructions are adequate if, "taken as a whole, [they] adequately advise the jury of the essential elements of the offenses charged and the burden of proof required of the government." *United States v. Sherer*, 653 F.2d 334, 337 (8th Cir. 1981). We conclude that the instructions were adequate.

It is settled law that a district court's failure to define "knowledge" or "knowingly" does not constitute "error, much less plain error." *United States v. Smith*, 635 F.2d 716, 720 (8th Cir. 1980) (holding that there is no need to define "knowledge" because the word has the meaning assigned it in common usage, and a juror would already understand the word); *see also United States v. Williams*, 923 F.2d 76, 78 (8th Cir. 1991) (per curiam) ("In the Manual of Model Criminal Instructions for the District Courts of the Eighth Circuit . . . , it is stated that 'the Committee believes that in most cases the word "knowingly" does not need to be defined.' Clearly, it was not plain error to omit such a definition.").

Nor was it plain error to omit an instruction defining "intent to defraud" with respect to the § 658 charge as Rice claims. In *United States v. Williams*, 935 F.2d 1531, 1536-37 (8th Cir. 1991), this Court held that failure to instruct the jury that

-10-

"intent to defraud" was an essential element of a charge under § 658 was error but not plain error. Despite the omission of the intent to defraud element in its entirety, this Court affirmed because the evidence against the defendant was overwhelming and because "intent" and "proof of intent" were defined elsewhere in the instructions. *Id.* Critically, the Court opined that "[w]e recognize that the addition of the third element *or* simply a definition of 'intent to defraud' would have made" the substantive § 658 instruction "complete." *Id.* at 1536 (emphasis added).

In this case, the jury instructions offered the essential protections recognized as sufficient in *Williams*; that is, the instructions defined "proof of intent" and also contained "intent to defraud" as an element of a violation of § 658. The jury in this case also benefitted from a definition of "fraudulent," as the jury instructions informed the jury that a "statement is 'fraudulent,' if known to be untrue, and made or caused to be made with intent." Moreover, just as in *Williams*, the evidence of Rice's § 658 violation is overwhelming. As discussed above, the evidence plainly supported a finding that Rice was aware of the requirement that any withdrawal from his supervised account be approved by FSA. He nevertheless went from branch to branch to find a teller who would allow the unapproved withdrawal. And he failed to return the funds when FSA again reminded Rice of the approval requirement and demanded he return the money he wrongfully withdrew. The evidence of Rice's guilt is overwhelming, and the failure to separately define "intent to defraud" cannot be said to have affected his substantial rights.

Rice also challenges the district court's failure to give, *sua sponte*, defense instructions addressing a good faith and advice of counsel defense. However, the failure *sua sponte* to instruct concerning a "good faith" defense was not plain error. The instructions in this case clearly informed the jury that it could not find Rice guilty unless it found beyond a reasonable doubt that Rice "knowingly, voluntarily and intentionally made a false, fictitious, or fraudulent statement or representation" and that Rice "knowingly concealed, removed, disposed of or converted to his own use or

that of another money or accounts mortgaged or pledged to the [FSA] [and] acted with intent to defraud the [FSA]." The jury also received more specific definitions of "false," "fictitious," and "fraudulent," all of which informed the jury that a statement that met any of those definitions must have been made with knowledge that it was "untrue." Finally, a definition of "reasonable doubt" told the jury that, to find guilt, the proof must be "of such a convincing character that a reasonable person would not hesitate to rely on or act upon it."

These instructions, taken as a whole, fairly encompass the concept of good faith. "The essence of a good-faith defense is that one who acts with honest intentions cannot be convicted of a crime requiring fraudulent intent." *Scherer*, 653 F.2d at 338. A defendant who knowingly made a false statement or acted with intent to defraud cannot fairly be said to have acted in good faith, *see United States v. Rashid*, 383 F.3d 769, 778 (8th Cir. 2004) (holding in substantially identical circumstances that "[w]e find no error, much less plain error, in the district court's refusal to give the requested good faith instruction"), *sentence vacated on* Booker *grounds sub nom. Abu Nahia v. United States*, 126 S. Ct. 300 (2005), and we are unpersuaded that the jury would have reached a different conclusion had a good faith instruction been given.

Rice also contends that he was entitled to an "advice of counsel" instruction because he consulted an attorney with respect to the loan documents and had counsel at all meetings, including the meeting at which he made the false statement. However, a defendant is not immunized from criminal prosecution merely because he consulted an attorney in connection with a particular transaction. Rather, to rely upon the advice of counsel in his defense, a defendant must show that he: (i) fully disclosed all material facts to his attorney before seeking advice; and (ii) actually relied on his counsel's advice in the good faith belief that his conduct was legal. *Covey v. United States*, 377 F.3d 903, 908 (8th Cir. 2004). Here, Rice cited no evidence indicating that Rice told his loan counsel he sold his soybeans the day before the loan closing, that Rice obtained any advice from his loan counsel about representing to FSA employees

that his financial circumstances had not materially changed or that Rice consulted his attorney about withdrawing pledged funds from the supervised account. A district court need not give any defense instruction where the facts do not support the defense. *See, e.g.*, *United States v. Parker*, 364 F.3d 934, 945-46 (8th Cir. 2004). Rice failed to establish a factual basis necessary to support such an instruction, and there is no error, much less reversible plain error.

At bottom, we conclude that, "taken as a whole," the jury instructions "adequately advise[d] the jury of the essential elements of the offenses charged and the burden of proof required of the government," *Scherer*, 653 F.2d at 337, and the district court did not plainly err when it omitted the definitions and instructions that Rice now claims were required.

## C.      Ineffective Assistance of Counsel

While "[g]enerally, ineffective assistance of counsel claims are better left for post-conviction proceedings," *Cook*, 356 F.3d at 919, this Court may decide an ineffective assistance issue on direct appeal if the ineffectiveness is "readily apparent or [the representation is] obviously deficient," if resolution on direct appeal will "avoid a plain miscarriage of justice," or if "the record has been fully developed." *Id.* at 919-20. Here, the record is fully developed because the district court held an evidentiary hearing at which it allowed Rice to present evidence regarding the alleged ineffective assistance of counsel. *See United States v. Williams*, 897 F.2d 1430, 1434 (8th Cir. 1990) (allowing direct appeal where the district court held an evidentiary hearing). Additionally, both parties represented at oral argument that the record is fully developed. Accordingly, we will resolve this issue now.

For Rice to prevail on his ineffective assistance of counsel claim, he must show that his "counsel made errors so serious that counsel was not functioning as the

'counsel' guaranteed the defendant by the Sixth Amendment [and] that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Cook*, 356 F.3d at 919. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. To overcome that presumption, a defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . [,] a reasonable probability [meaning] a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690.

Rice contends that his trial counsel was ineffective because he failed to follow courtroom procedures and other local rules of court (e.g., norms governing use of exhibits and rules governing the submission of witness lists, exhibit lists and briefs or admission of evidence) and "bored the jury"; decided not to call Rice's loan counsel as a witness at trial and called three other witnesses Rice believes he should not have called; failed to object to the alleged "prior bad acts" evidence and hearsay discussed in Part II.B.1., above; and failed to request the jury instructions discussed in Part II.B.2., above.

We conclude that none of Rice's trial counsel's alleged deficiencies was tantamount to a failure to function as counsel or that they prejudiced the defense. There is no evidence or persuasive argument indicating that the failure of Rice's trial counsel to follow certain courtroom norms or local rules or to provide a constantly riveting presentation affected the outcome of the case. This is especially true given that all the witnesses were allowed to testify and all exhibits were admitted, despite any failure to follow the rules. The same is true of trial counsel's decisions regarding which witnesses to call at trial. Trial counsel enjoys a strong presumption that his decisions regarding which witnesses to call were reasonable. *Fretwell v. Norris*, 133 F.3d 621, 627-28 (8th Cir. 1998). Here, the decision not to call Rice's loan counsel

as a witness was within the range of reasonable litigation strategies. As Rice even argued on appeal, testimony that his loan counsel reviewed documents may simply have reinforced how clearly Rice knew he was violating the law. Moreover, Rice failed to submit any evidence concerning what his loan counsel would have said had he been called to testify. We cannot, therefore, determine that his loan counsel's testimony would have affected the case's outcome. Rice's complaints about his trial counsel's decision to call other witnesses are similarly unpersuasive in that we cannot conclude that calling those witnesses affected the outcome of the trial.

As we discussed previously, *see* Part II.B.1., *supra*, the alleged hearsay evidence about which Rice complains was either properly admissible or did not substantially affect the proceedings. Nor does the admission of the "prior bad acts" evidence or failure to object to its admission mean that Rice's trial counsel was ineffective. To the contrary, it is clear from the record that Rice's trial counsel consciously chose to pursue a strategy meant to cast doubt on FSA's motives and the testimony of Government witnesses. We cannot say that this choice was outside the range of rational trial strategies, especially when the strength of the inculpatory evidence made any defense an uphill battle. Finally, as we have already concluded that the jury was fairly instructed, *see* Part II.B.2., *supra*, Rice cannot show that his defense was prejudiced by virtue of the jury instructions.

## III. CONCLUSION

Accordingly, we affirm Rice's convictions.

_____