# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-1348

_____

United States of America

*Plaintiff - Appellee*

v.

Anthony Fast Horse

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Sioux Falls

_____

Submitted: October 25, 2013
Filed: April 7, 2014

_____

Before RILEY, Chief Judge, COLLOTON and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

Anthony Fast Horse appeals his conviction for one count of criminal sexual conduct in violation of 18 U.S.C. §§ 1153, 2242(2), 2246(2)(A). In addition to several evidentiary arguments, Fast Horse argues on appeal that the mens rea jury instruction denied him a legal defense. He also appeals the application of the vulnerable victim sentence enhancement pursuant to U.S. Sentencing Guidelines

Manual ("USSG") § 3A1.1(b)(1) (2012). The government must prove beyond a reasonable doubt Fast Horse's knowledge that his victim lacked the capacity to consent to sexual conduct. See United States v. Bruguier, 735 F.3d 754, 757–63 (8th Cir. 2013) (en banc). Because the jury instructions did not require the jury to make such a finding, we reverse Fast Horse's conviction and remand for a new trial.

## I. Background

Anthony Fast Horse and Ina Crow Dog were each charged with five counts of sexual abuse of Kimberly Clairmont (Counts I and II) and Quintina Little Elk (Counts III, IV and V), each count corresponding to a different episode of substantially similar conduct. Crow Dog pled guilty to Count III in exchange for dismissal of the other charges; four days later, she filed an amended plea agreement substituting Count IV for Count III, and the other charges were dismissed. Just before Fast Horse's trial, Little Elk recanted the allegations that led to Count III. Fast Horse went to trial on the remaining counts; he was acquitted of Counts I, II, and V, and he was found guilty of and sentenced for Count IV.

In Count IV, Fast Horse and Crow Dog were charged with the sexual abuse of Little Elk. See 18 U.S.C. § 2242(2).[1] Fast Horse and Crow Dog were married, and Crow Dog is Little Elk's older half-sister. Little Elk testified that she went to Crow Dog and Fast Horse's house because Crow Dog had asked her to help clean up for a party. When Little Elk started to doze off on a couch during the party, Crow Dog asked her to rest instead in the bedroom Crow Dog and Fast Horse shared. After

---

[1]In areas subject to federal jurisdiction, "[w]hoever . . . knowingly . . . (2) engages in a sexual act with another person if that person is– (A) incapable of appraising the nature of the conduct; or (B) physically incapable of declining participation in, or communicating unwillingness to engage in, that sexual act; or attempts to do so" may be found to have committed the crime of sexual abuse under 18 U.S.C. § 2242(2).

some time sleeping in the bed, Little Elk awoke to find Fast Horse having sexual intercourse with her; he stopped when she pushed him away.

## II. Discussion

The parties disagree as to the standard of review for the district court's jury instruction regarding Fast Horse's mens rea. The government argues that since Fast Horse did not explicitly object to the relevant jury instruction as to its treatment of mens rea, he has forfeited his appeal of this issue other than for plain error. See United States v. Poitra, 648 F.3d 884, 887 (8th Cir. 2011) ("We typically review a challenge to jury instructions for an abuse of discretion. Where a party fails to timely object to an instruction at trial, however, we review only for plain error." (citation omitted)). Citing Bruguier, Fast Horse maintains that we should review this instruction de novo because the final jury instructions' omission of an element of the offense—namely, his knowledge of Little Elk's incapacity—denied him the defense that he lacked such awareness. See Bruguier, 735 F.3d at 757 (quoting United States v. Young, 613 F.3d 735, 744 (8th Cir. 2010)). We assume, without deciding, that Fast Horse's objection to the relevant instruction was insufficiently specific, and we apply plain error review.

In reviewing for plain error, we have the discretion to reverse the district court if the defendant shows "(1) an error, (2) that was 'plain,' (3) 'affects substantial rights,' and (4) 'the error seriously affects the fairness, integrity or public reputation of judicial proceedings.'" United States v. Rush-Richardson, 574 F.3d 906, 910 (8th Cir. 2009) (quoting United States v. Olano, 507 U.S. 725, 735–36 (1993), for plain error factors). A jury instruction is plainly erroneous if it misstates the law. United States v. Wisecarver, 598 F.3d 982, 989 (8th Cir. 2010). Although our en banc decision in Bruguier post-dates Fast Horse's trial, for these purposes "it is enough that an error be 'plain' at the time of appellate consideration." Henderson v. United States, 133 S. Ct. 1121, 1130–31 (2013); United States v. Webster, 84 F.3d 1056,

1067 (8th Cir. 1996) ("the proper focus is the law applicable on appeal rather than at trial").

"Jury instructions are adequate if, taken as a whole, [they] adequately advise the jury of the essential elements of the offenses charged and the burden of proof required of the government." United States v. Rice, 449 F.3d 887, 895 (8th Cir. 2006) (quotation omitted). Since it is clear from Bruguier that for a sexual abuse conviction under 18 U.S.C. § 2242(2), a jury must find beyond a reasonable doubt the defendant's knowledge of his or her victim's incapacity, the district court's instructions would misstate the law if they did not "adequately advise" the jury of this element. See Bruguier, 735 F.3d at 761 ("'[K]nowingly' in section 2242(2) applies to each element of the offense."). In this case, the court instructed the jury as follows:

> The crime of sexual abuse, as charged in Count IV of the indictment, has five elements, which are:
> *One*, that on or about the 1st day of December, 2010, and the 31st day of December, 2010, Anthony Fast Horse engaged in a sexual act with Quintina Little Elk;
> *Two*, that at the time of such act, Quintina Little Elk was incapable of appraising the nature of the conduct or was physically incapable of declining participation in, or communicating her unwillingness to engage in, that sexual act;
> *Three*, that Mr. Fast Horse committed such act knowingly;
> *Four*, that Mr. Fast Horse is an Indian; and
> *Five*, that the offense took place in Indian Country.
> If all of these elements have been proved beyond a reasonable doubt as to the Defendant, then you must find the Defendant guilty of the crime charged in Count IV of the indictment, otherwise you must find the Defendant not guilty of this crime.

Final Jury Instructions at 10, No. 12-30034, ECF No. 201. The district court rejected Fast Horse's proposed jury instruction on this same count. That instruction proposed

an expansion of the third element regarding mens rea and would have required the jury to find beyond a reasonable doubt as follows:

> 3.    That Anthony Fast Horse and Ina Crow Dog *knew* that Quintina Little Elk was incapable of appraising the nature of the conduct and was physically incapable of declining participation in and communicating unwillingness to engage in that sexual act.

Proposed Jury Instructions at 4, No. 12-30034, ECF No. 151-1 (emphasis added).[2]

The jury instructions in this case do differ from the instructions given in Bruguier, which we found had "erroneously omitted a mens rea element." Bruguier, 735 F.3d at 756. In Bruguier, the final instructions told the jurors that, in order to convict Bruguier, they must find beyond a reasonable doubt (1) that he "did knowingly cause or attempt to cause Crystal Stricker to engage in a sexual act"; and (2) "that Crystal Stricker was physically incapable of declining participation in and communicating unwillingness to engage in that sexual act." Id. at 757. Thus, in Bruguier, the district court included the mens rea requirement, "knowingly," only in the element requiring the jury to find that the defendant had committed the sexual act. In contrast, the district court in this case included a separate element altogether for the mens rea requirement; it did not include mens rea in either the conduct element (first element) or the incapacity element (second element) of the offense. That additional element simply required the jury to find "that Fast Horse committed such act knowingly." The question is, then, whether this instruction, as given, properly required the jury to find beyond a reasonable doubt both that Fast Horse *knowingly* committed the sexual act *and* that he *knew* Quintina Little Elk was incapable of appraising the nature of the conduct or was physically incapable of declining

---

[2]The proposed instruction refers to Ina Crow Dog because she had not yet pled guilty at the time it was submitted.

participation in, or communicating her unwillingness to engage in, that sexual act. We conclude the instruction did not.

Pursuant to element one, the jury was instructed it had to find that Fast Horse "engaged in a sexual act." Element two provided that "at the time of such act," Little Elk lacked the capacity to consent in "that sexual act." Finally, element three, the only element that instructed the jury on mens rea, required the jury to find "that Mr. Fast Horse committed such act knowingly." Thus, the second and the third elements referred back to "such act" and "that sexual act"—both of which must be the "sexual act" described in element one. There is no other "act" described in the instruction. A fair and logical reading of the instruction therefore leads to the conclusion that the jury was required to find only that Fast Horse knew he was committing the sexual act at issue, but not that he knew Little Elk lacked the capacity to consent to that sexual act. This jury instruction shared the same inaccurate statement of the law as the instruction in Bruguier. See Bruguier, 735 F.3d at 757 (jury required to find only that Bruguier "did knowingly cause or attempt to cause Crystal Stricker to engage in a sexual act"). The court's use of jury instructions that misstated the law constituted plain error. Fast Horse thus meets the first and second prongs of the Olano plain error test.

Under the third prong of the Olano test, the erroneous instruction must have affected the defendant's substantial rights. The instruction must have been prejudicial, meaning that there was not a certainty, but a "reasonable probability that, but for [the error claimed], the result of the proceeding would have been different." Wisecarver, 598 F.3d at 989 (citation omitted). See United States v. Rice, 449 F.3d 887, 896 (8th Cir. 2006) (no plain error where fraud jury instructions did not define "intent to defraud," but did define similar terms such that the requisite mens rea was clear, and "overwhelming" evidence demonstrated that Rice "was aware" of a legal requirement that he repeatedly sought to evade and then violated); United States v.

-6-

Pinque, 234 F.3d 374, 378 (8th Cir. 2000) (no plain error where conspiracy jury instructions omitted the requirement for jury to find that defendant conspired with at least one person who was not a government agent, where jury heard "a great deal of evidence tending to show" exactly that). Here, neither party presented evidence during the trial on Fast Horse's knowledge of Little Elk's incapacity or argued it in closing. Had the jury instructions required the government to prove this element beyond a reasonable doubt, presumably both parties would have presented additional evidence and argument on that element. Moreover, answering this question requires credibility determinations that are the province of the jury, rather than evidence currently available in the record. We therefore cannot say there was "overwhelming" evidence on this point. See Rice, 449 F.3d at 896. In this situation, we find it reasonably probable, see Wisecarver, 598 F.3d at 989, that the verdict would have been different with jury instructions that accurately reflected the elements of 18 U.S.C. § 2242(2).

Finally, where a defendant has been denied "his Sixth Amendment right to a jury determination of an important element of the crime, the integrity of the judicial proceeding is jeopardized." United States v. Baumgardner, 85 F.3d 1305, 1310 (8th Cir. 1996). See also Webster, 84 F.3d at 1067 ("[B]ecause it is unclear whether a properly instructed jury would have found [defendant] guilty," failing to correct the district court's error would "result in a miscarriage of justice." (citation omitted)). Given the current state of the law and the omission of a clear, accurate mens rea jury instruction, the fourth prong of the Olano test is satisfied, and we have the discretion to reverse Fast Horse's conviction on plain error review.

We note that other defendants who appealed their convictions under 18 U.S.C. § 2242(2) based on the mens rea jury instruction have been granted new trials after our en banc decision in Bruguier. See United States v. Rouillard, 740 F.3d 1170 (8th Cir. 2014) (reversing conviction after Bruguier, given similar proffered and denied

jury instructions); <u>United States v. Chasing Hawk</u>, ___ F. App'x ___, No. 12-1193, 2013 WL 6332110 (8th Cir. Dec. 6, 2013) (same). Given our obligation to ensure both that Fast Horse's constitutional rights are protected and that justice is administered consistently, we reverse Fast Horse's conviction.

## III. Conclusion

We reverse Fast Horse's conviction and remand for a new trial. We therefore need not address his remaining claims on appeal. <u>See</u> <u>Rush-Richardson</u>, 574 F.3d at 913 (declining to reach sentencing arguments given the decision to reverse conviction).

COLLOTON, Circuit Judge, dissenting.

The court vacates yet another conviction of a sexual aggressor who engaged in sexual intercourse with a woman who was passed out or asleep. The font of these reversals, *United States v. Bruguier*, 735 F.3d 754 (8th Cir. 2013) (en banc), held by the narrowest of margins that 18 U.S.C. § 2242(2) requires a jury to find that a perpetrator of sexual abuse acted with actual knowledge that his victim was incapacitated. The court's decision in this case, however, goes well beyond *Bruguier*. It dilutes the plain error standard of review and grants relief to a defendant, Anthony Fast Horse, who failed to object and cannot meet his burden of showing a clear error or prejudice based on a jury instruction that is materially different from the instruction in *Bruguier*. I would affirm the judgment.

During his trial on charges of committing sexual abuse in Indian country, Fast Horse proposed a jury instruction concerning § 2242(2). Under his proposal, one element of the offense was that the defendant "knew that [the victim] was incapable of apprising the nature of the conduct and was physically incapable of declining

participation in and communicating unwillingness to engage in that sexual act."  R. Doc. 151-1, at 4.  This proposal was an incorrect statement of the law, as it required the government to prove that Fast Horse knew the victim suffered from three types of incapacity, whereas the statute as construed in *Bruguier* requires knowledge of only one.  The district court declined to adopt Fast Horse's proposal and stated the elements in a different way.  R. Doc. 201, at 10.  At the conference on final jury instructions, Fast Horse did not object to the way in which the district court expressed the knowledge requirement of § 2242(2).  T. Tr. 478-494.

Federal Rule of Criminal Procedure 30 provides that to preserve an objection to jury instructions for appellate review, a party must "inform the court of the specific objection and the grounds for the objection before the jury retires to deliberate." Merely proposing a jury instruction at an earlier stage of the proceeding (even one that correctly states the law) is insufficient to preserve a claim of error in the final instructions.  A defendant must lodge a specific objection in response to the final instructions proposed by the court.  *United States v. Tobacco*, 428 F.3d 1148, 1150 (8th Cir. 2005); *United States v. Hecht*, 705 F.2d 976, 979 (8th Cir. 1983); *United States v. Kutrip*, 670 F.2d 870, 876 (8th Cir. 1982); *United States v. Parisien*, 574 F.2d 974, 976 (8th Cir. 1978); *United States v. Byrd*, 542 F.2d 1026, 1028 (8th Cir. 1976).  Fast Horse made no such objection.  His only objection to the pertinent instruction was that it should address "the absence of consent."  T. Tr. 482-83.  He therefore forfeited any challenge to the knowledge element of the instruction, and the plain error standard of Federal Rule of Criminal Procedure 52 governs our appellate review.  *See generally United States v. Olano*, 507 U.S. 725 (1993).[3]

---

[3]The court, *ante*, at 3, attributes to Fast Horse an argument that *Bruguier* provides for *de novo* review of the alleged instructional error.  The *Bruguier* court's discussion of standard of review, however, concerned how to review a *preserved* claim of error in the jury instructions defining the elements of § 2242(2).  On that issue, which is not presented here, *Bruguier* deviated from circuit precedent by

To justify relief under the plain error standard of Rule 52, Fast Horse must show that the district court committed an error, that the error was obvious, that the error prejudiced him, and that the error seriously affected the fairness, integrity, or public reputation of judicial proceedings. *Id*. at 732. "Meeting all four prongs is difficult, as it should be." *Puckett v. United States*, 556 U.S. 129, 135 (2009) (internal quotation omitted). Fast Horse cannot meet this burden.

The district court's final jury instruction regarding § 2242(2) included five elements:

> The crime of Sexual Abuse, as charged in Count IV of the indictment, has five elements, which are:
>
>> *One*, that on or about the 1st day of December, 2010, and the 31st day of December, 2010, Anthony Fast Horse engaged in a sexual act with [the alleged victim];

applying *de novo* review. The defendant in *Bruguier* complained that the final instructions omitted an element of the offense. Our pre-*Bruguier* cases reviewed a claim that jury instructions omitted an element of the charged offense for abuse of discretion. *See United States v. Dvorak*, 617 F.3d 1017, 1024 (8th Cir. 2010); *United States v. Dooley*, 580 F.3d 682, 685 (8th Cir. 2009); *United States v. Williams*, 308 F.3d 833, 837 (8th Cir. 2002). *De novo* review was applied where a defendant claimed that the instructions denied him a legal defense, such as entrapment, insanity, coercion, or self-defense. *E.g.*, *United States v. Chase*, 717 F.3d 651, 653 (8th Cir. 2013); *United States v. Young*, 613 F.3d 735, 744 (8th Cir. 2010) (cited in *Bruguier*, 735 F.3d at 757); *United States v. Harper*, 466 F.3d 634, 649 (8th Cir. 2006); *United States v. Davis*, 237 F.3d 942, 945 (8th Cir. 2001); *United States v. Long Crow*, 37 F.3d 1319, 1323 (8th Cir. 1994).

> *Two*, that at the time of such act, [the alleged victim] was incapable of appraising the nature of the conduct or was physically incapable of declining participation in, or communicating her unwillingness to engage in, that sexual act;
>
> *Three*, that Mr. Fast Horse committed such act knowingly;
>
> *Four*, that Mr. Fast Horse is an Indian; and
>
> *Five*, that the offense took place in Indian Country
>
> If all of these elements have been proved beyond a reasonable doubt as to the Defendant, then you must find the Defendant guilty of the crime charged in Count IV of the indictment, otherwise you must find the Defendant not guilty of this crime.

R. Doc. 201, at 10.

The court, *ante*, at 3, 6, subtly converts plain-error review to *de novo* review by asserting that Fast Horse need only show that the final jury instruction "misstated the law." But any error in the instruction must be plain to justify relief under Rule 52, and a jury instruction that does not clearly and obviously misstate the law fails to qualify. *See, e.g.*, *United States v. Ganim*, 510 F.3d 134, 151 (2d Cir. 2007) (Sotomayor, J.) (although jury charge "introduced unnecessary ambiguity," there was no plain error because any error was not "clear or obvious."); *United States v. Thayer*, 201 F.3d 214, 222 (3d Cir. 1999) (explaining that under plain-error review, "[w]hen a jury instruction is ambiguous and open to an unconstitutional interpretation, . . . we will reverse only if the ambiguity in the instruction is 'sure' to have had a prejudicial effect."). Under its more lenient approach, the court reasons that the instruction was

wrong, because the third element—that Fast Horse "committed *such* act knowingly"—meant only that Fast Horse knew he engaged in a sexual act, not that he knew the victim was incapacitated. But a common-sense jury, attempting in good faith to follow the instruction, could just as well have read it as a progression, in which the third element encompassed the two elements that came before, and the "act" that Fast Horse committed knowingly was defined by the second element as a sexual act with an incapacitated person. "Like so much other legalese, *such* is inherently ambiguous." Bryan A. Garner, *Learn Them and Ax Them: Here are a few suggestions to build your own 'Index Expurgatorius'*, ABA Journal Magazine, Apr. 2014. The instruction's ambiguity left room for a jury to decide that Fast Horse was not guilty because he lacked knowledge of the victim's incapacity, which may explain why Fast Horse's capable counsel did not object. It is not the stuff of plain error.

Fast Horse also makes no showing that he was prejudiced by the instruction. The court, *ante*, at 7, again subtly converts what should be plain-error review to ordinary harmless-error review by presuming that Fast Horse would present additional evidence in a new trial with different instructions and concluding that the prejudice inquiry cannot be resolved based on "evidence currently available in the record." The burden, however, rests with Fast Horse to show, on the current record, that he was prejudiced. It is "our obligation as an appellate court to apply the third and fourth *Olano* factors based upon the existing record on appeal." *United States v. Pirani*, 406 F.3d 543, 552 (8th Cir. 2005) (en banc). That Fast Horse supposedly had no reason to present evidence or make argument about absence of knowledge does not relieve him of the burden. We rejected that notion in *Pirani*, where the defendant had no reason to argue for a variance from the then-mandatory sentencing guidelines, but we held that where the record is silent, and the effect of the alleged error is "uncertain or indeterminate—where we would have to speculate—the appellant has not met his burden of showing a reasonable probability that the result would have been different but for the error." *Id.* at 553 (internal quotation omitted).

Even on the court's own terms, the presumption that Fast Horse forwent presenting additional evidence on the element of knowledge is speculative and unwarranted by the circumstances. Fast Horse proposed a jury instruction that would have expressly required the jury to find that he knew of the victim's incapacity. The district court did not settle the final jury instructions until after the close of the evidence, at which time the court determined to give the instruction described above. Before the instructions were resolved, the district court did not exclude any evidence that Fast Horse sought to introduce on the issue of knowledge. If Fast Horse had additional evidence that would raise doubt about his knowledge of the victim's incapacity, then he had no reason to withhold it during the trial while a decision on final jury instructions was pending.

Knowledge is rarely proved by direct evidence, and the government presented strong circumstantial evidence that Fast Horse knew the victim was incapacitated. The victim testified that she attended a party at Fast Horse's residence where the victim and others drank alcohol. During the party, she went into a bedroom, which Fast Horse shared with the victim's sister, and passed out while fully clothed. She later awakened with Fast Horse on top of her, engaging in sexual intercourse; her clothing had been removed, except for an undershirt. Fast Horse did not get off when she called for him to stop, and she had to push him away. The jury indisputably found beyond a reasonable doubt that the victim was incapacitated when Fast Horse engaged in the sexual act. The circumstances of the offense and the close proximity of the perpetrator to the victim provided ample reason to conclude that Fast Horse knew full well that the victim was incapacitated. Fast Horse points to nothing in the record to suggest that a different jury acting under different instructions would have acquitted him based on doubt about whether he thought the sleeping victim was awake when he penetrated her.

-13-

A third manifestation of the court's departure from plain-error review—this one, not so subtle—is an appeal to ensure that "constitutional rights are protected" and that "justice is administered consistently." *Ante*, at 8. "But the seriousness of the error claimed does not remove consideration of it from the ambit of the Federal Rules of Criminal Procedure." *Johnson v. United States*, 520 U.S. 461, 466 (1997). And of course plain-error review, by its very nature, means that some defendants who forfeit a claim of error will be denied relief while those who make appropriate objection will succeed on appeal. "No procedural principle is more familiar . . . than that a constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." *Yakus v. United States*, 321 U.S. 414, 444 (1944).

Neither decision cited by the court regarding § 2242(2), *United States v. Rouillard*, 740 F.3d 1170 (8th Cir. 2014), or *United States v. Chasing Hawk*, No. 12-1193, 2013 WL 6332110 (8th Cir. Dec. 6, 2013) (unpublished), granted relief based on a comparable jury instruction after applying plain-error review. The court neglects to mention, moreover, that *Chasing Hawk* was an unpublished decision and is not precedent. 8th Cir. R. 32.1A. The court suggests that *Rouillard* granted relief "given similar proffered and denied jury instructions," but fails to describe critical differences between that case and this one. The defendant in *Rouillard* proffered a correct statement of the law as construed in *Bruguier* and made a contemporaneous objection to the final instructions in compliance with Rule 30. Fast Horse proffered an erroneous statement of the law and made no contemporaneous objection to the final instruction on knowledge. The final instruction in *Rouillard* was the same as in *Bruguier*; the instruction in this case was different. The court in *Rouillard* conducted ordinary review; Fast Horse is limited to plain-error review and bears the burden to show prejudice.

-14-

For these reasons, there was no plain error in the jury instructions that warrants relief. Seeing no merit to Fast Horse's other challenges to his conviction, and no material distinction between this case and *United States v. Betone*, 636 F.3d 384, 388 (8th Cir. 2011), on the application of USSG § 3A1.1(b)(1) at Fast Horse's sentencing, I would affirm the judgment of the district court.

_____