**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Elsayed Akef ELSHENAWY,**
**Defendant-Appellant.**

**No. 85–1540.**

United States Court of Appeals,
Sixth Circuit.

Argued June 3, 1986.
Decided Sept. 23, 1986.

Kenneth R. Sasse, Federal Defender Office, Detroit, Mich., Miriam L. Siefer, Rafael C. Villarruel (argued), for defendant-appellant.

John N. Thompson, Jr. (argued), Detroit, Mich., for plaintiff-appellee.

Before KEITH and BOGGS, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

BOGGS, Circuit Judge.

Appellant, Elsayed Akef Elshenawy, was charged with "knowingly" possessing contraband cigarettes, in violation of 18 U.S.C. § 2342(a). Elshenawy filed a pre-trial motion to construe the statute, and the district court ruled that the statute does not require the government to prove that the defendant knew that payment of state cigarette taxes was required, or knew that taxes had not been paid. Subsequent to the ruling, Elshenawy entered a conditional guilty plea under Fed.R.Crim.P. 11(a)(2), preserving for appeal the issue of whether 18 U.S.C. § 2342(a) requires the government to prove that a defendant knew about the taxing requirement. For the reasons set forth below, we hold that the statute does not place such a requirement on the government, and we thus affirm Elshenawy's conviction.

Appellant was charged with violating 18 U.S.C. § 2342(a), which provides as follows: "It shall be unlawful for any person knowingly to ship, transport, receive, possess, sell, distribute, or purchase contraband cigarettes." "Contraband cigarettes" are defined as follows:

a quantity in excess of 60,000 cigarettes which bear no evidence of the payment of applicable state cigarette taxes in the State where such cigarettes are found, if such State requires a stamp, impression, or other indication to be placed on packages or other containers of cigarettes to evidence payment of cigarette taxes.

18 U.S.C. § 2341(2).

Elshenawy does not dispute that he was in possession of far more than 60,000 cigarettes, that the cigarettes bore no evidence that taxes had been paid, or that the cigarettes were found in Michigan, a state that requires a stamp on cigarette packs as evidence of payment of taxes. Furthermore, he admits that he knew that the cigarettes in his possession bore no indicia and that he assumed that no state taxes had been paid.[1] The sole issue on appeal is whether the government is required to prove beyond a reasonable doubt that Elshenawy knew (1) that the cigarettes in his possession were required to be taxed and (2) that the taxes had not been paid.

In support of his contention that 18 U.S.C. § 2342(a) requires proof that the defendant knew that the cigarettes in his possession were required to be taxed, Elshenawy relies primarily on *Liparota v. United States*, 471 U.S. 419, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985). In *Liparota*, the defendants were charged with violating 7 U.S.C. § 2024(b), which provides that one who "knowingly uses, transfers, acquires, alters, or possesses [food stamps valued over $100] in any manner not authorized by this chapter shall ... be guilty of a felony." The Supreme Court held that this language required the government to prove that a defendant knew that food stamps came into his possession in an unauthorized manner.

*Liparota*, however, can be distinguished from the instant case by the subtle but

---

1. At the hearing before the district court on the entry of his guilty plea, Elshenawy testified that he possessed 300 to 500 cases of cigarettes (App. 26) (at 12,000 cigarettes per case, five cases would be enough to reach the statutory threshold), and that he had assumed there would be no tax stamps on the cigarettes, since the price was so far below market price. (App. 27) Further, he stated: "I assume, too, that they were supposed to be legal or whatever, for sale, *legal or illegal, whatever, it's something got to be wrong with it to be sold at that price, so I think it shouldn't have the stamp on it.* (App. 28) (emphasis added) Later in the hearing, Elshenawy repeated that he had assumed that the low price meant that taxes had not been paid, and also stated that no stamps had been affixed, but that he had not attempted to find out if the taxes had been paid. (App. 30)

significant difference in the language of the statutes involved. Section 2024(b), 7 U.S.C., addresses the knowing use, etc. of food stamps "in any manner not authorized by this chapter [of the United States Code]." This statute thus emphasizes the connection between knowledge and the manner of authorized use. In contrast, 18 U.S.C. § 2342(a) forbids the knowing possession, etc., of contraband cigarettes, which are defined in a different statutory section. The definition of "contraband cigarettes" in that other section (18 U.S.C. § 2341(2)) does not depend upon the actor's state of mind or degree of knowledge. Rather, the definition of "contraband cigarettes" depends only upon the absence of indicia of state tax payment and location in a state requiring such indicia.

We believe that three other Supreme Court cases—*United States v. Freed,* 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971), *United States v. International Minerals and Chemicals Corp.* 402 U.S. 558, 91 S.Ct. 1697, 29 L.Ed.2d 178 (1971), and *United States v. Dotterweich,* 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48 (1943)—are more relevant than *Liparota* to the issue in the present case. *Freed* dealt with a statute, 26 U.S.C. § 5861(a) (1964), which made it unlawful for any person "to receive or possess a firearm which is not registered to him." The *Freed* Court held that this statute did not require "specific intent or knowledge" by the defendant that a firearm in his possession was unregistered. 401 U.S. at 607, 91 S.Ct. at 1117.

Similarly, in *International Minerals,* the defendant was charged with "knowingly" failing to indicate on the appropriate papers that he was transporting a "corrosive liquid," in violation of an Interstate Commerce Commission regulation. The Court ruled that this regulation did not create an exception to the general rule that ignorance of the law is no excuse. Rather, the Court noted that, in regard to dangerous or obnoxious products, "the probability of regulation is so great that anyone who is aware that he is in possession of them or

dealing with them must be presumed to be aware of the regulation." 402 U.S. at 565, 91 S.Ct. at 1701–02. The defendant knew that he was carrying a corrosive liquid, though not that he was violating an ICC regulation.

Finally, in *Dotterweich,* a corporate officer was charged with interstate shipment of adulterated and misbranded drugs of which he disclaimed knowledge. The *Dotterweich* Court concluded that:

> The prosecution to which Dotterweich was subjected is based on a now familiar type of legislation whereby penalties serve as effective means of regulation. Such legislation dispenses with the conventional requirement for criminal conduct—awareness of some wrongdoing. In the interest of the larger good it puts the burden of acting at hazard upon a person otherwise innocent but standing in responsible relation to a public danger.

320 U.S. at 280–81, 64 S.Ct. at 136, 137; *see also United States v. Balint,* 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604 (1922) (defendant could not avoid conviction of sale of narcotics by claiming that he did not know the drugs were covered by a federal act).

*Freed, International Minerals,* and *Dotterweich* dealt with possession of heavily regulated articles—firearms, corrosive liquids, and drugs. In each case, the government was required to show that the defendant knew the physical nature of what he possessed, but not that he knew that possession was regulated or prohibited. However, in *Liparota,* which dealt with possession of food stamps, the government was required to prove both that the defendant knew the physical nature of what he possessed and that he knew that the possession was "not authorized." We conclude that possession of larger quantities of cigarettes is much more nearly analogous to possession of other heavily regulated articles such as firearms, corrosive liquids, and drugs than it is to possession of food stamps.

■ Similarly, a cigarette "bootlegger" [2] more closely resembles defendants Freed,

2. "Bootlegging" involves the legal purchase of

cigarettes in states imposing a low tax—chiefly

International Minerals, Dotterweich, and Balint than does defendant Liparota. The legislative history of P.L. 95–575 (92 Stat. 2464), from which 18 U.S.C. § 2342 is derived, exhibits the clear intent of Congress to enact legislation to deal with the cigarette "bootlegging" activities of organized crime, activities in which the knowledge of cigarette taxing requirements may appropriately be presumed.[3] *See generally* 1978 U.S.Code Cong. & Ad.News 5518. In regard to very large quantities of cigarettes, "the probability of regulation is so great that anyone who is aware that he is in possession of them or dealing with them must be presumed to be aware of the regulation." *See International Minerals,* 402 U.S. at 565, 91 S.Ct. at 1701, 1702.

■ Thus, the government here is only required to show that Elshenawy knew the physical nature of what he possessed, "a quantity in excess of 60,000 cigarettes which [bore] no evidence of the payment of applicable state cigarette taxes." This knowledge was carefully elicited in the taking of Elshenawy's guilty plea. The government was not required to prove that Elshenawy knew that Michigan requires that cigarette taxes be paid, or that Elshenawy knew that the taxes had not been paid. Accordingly, the judgment of the district court is AFFIRMED.

---

Kentucky, Virginia, and North Carolina—and their illegal re-sale in states imposing a high tax—primarily in the Northeast—without paying the tax.

**3.** The statute only touches large-scale "bootlegging" organizations, whose members can be presumed to know of cigarette taxation requirements. Congress clearly intended to exclude

from this presumption "casual smugglers" of cigarettes who transport relatively small quantities of cigarettes from low-tax states. Indeed, the statutory threshold amount was originally set at 20,000 cigarettes, was raised to 30,000, and was raised again to the current level of 60,000 cigarettes.