SHEPHERD, Circuit Judge.
A jury convicted James Bruguier of sexual abuse, in violation of 18 U.S.C. § 2242(2); burglary, in violation of S.D. Codified Laws § 22-32-1; aggravated sexual abuse, in violation of 18 U.S.C. § 2241(a); and sexual abuse of a minor, in violation of 18 U.S.C. § 2243(a).[1] The dis *756 trict court sentenced him to 360 months imprisonment followed by five years of supervised release. Bruguier challenges only two of his four convictions on appeal. First, he challenges his sexual abuse conviction under section 2242(2), arguing the jury instructions on that offense erroneously omitted a mens rea element and constructively amended the indictment. Second, he challenges his burglary conviction, arguing insufficiency of the evidence. In addition, Bruguier challenges his sentence. We have jurisdiction under 28 U.S.C. § 1291. Because we hold that the jury instructions erroneously omitted a mens rea element, we reverse his sexual abuse conviction under section 2242(2), remand for a new trial on that count, and consequently vacate his sentence. We affirm his burglary conviction.
I.
Bruguier’s sexual abuse conviction under section 2242(2) stems from an incident at Crystal Strieker and her boyfriend Mike Miller’s home in Lake Andes, South Dakota, on January 10, 2011. Witnesses testified that Strieker and Tracie Thunder Horse, Miller’s sister, returned to Strieker’s home after a long night of drinking. Miller was asleep in the house, woke up briefly when they returned, and then went back to bed.
Thunder Horse testified that Bruguier arrived at Strieker’s home later that night. She said that Bruguier and Strieker spoke in the living room, while she went into the kitchen. Thunder Horse testified that while she was in the kitchen, she heard “a big boom” and turned around to see Strieker lying on the living room floor. Bruguier “was on top of her, pulling her pants down” and “was starting to have sex with her.” Thunder Horse testified that Strieker’s eyes were closed, her head was pushed up against the wall, and she was not moving or speaking. Thunder Horse “got scared” and called for Miller, and Bruguier “told [her] to shut up.”
Miller testified that he was in bed when he heard “a big bang in the living room,” followed by Thunder Horse calling his name. He also heard someone say “Shut up.” Miller went to the living room, where he saw Bruguier having sex with Strieker. Miller testified that Strieker was not moving or speaking, that “her head was tilted towards the vent” on the wall, and that “[h]er eyes were open, but they were glossy red.” Miller grabbed Bruguier’s shoulder and told him to leave. He noticed that Bruguier’s penis was erect and that Strieker had semen between her legs. Miller described Strieker as “laying like she was knocked out” and “in a daze.” Thunder Horse testified that after Miller threw Bruguier out of the house, Miller “went to [Strieker] and started shaking her ... and calling her name, telling her to get up.”
Strieker testified she was so intoxicated that evening that she did not remember returning home. However, she testified that she did remember standing in her living room near the stereo some time after returning home. The next thing she remembered after that was lying in her own bed while Miller told her what had happened with Bruguier. Strieker testified that she felt “dirty” when Miller told her what Bruguier had done and that she never consented to having sex with Bru-guier.
Bruguier testified that Strieker kept asking him to dance after he arrived at her *757 house and that they kissed and had consensual sex. He testified that Strieker was conscious, moving, and moaning throughout their sexual encounter and that she never asked him to stop.
Bruguier’s burglary conviction stems from an unrelated incident during the summer of 2010. T.S., who was a minor at the time, testified at trial that she was asleep in her Lake Andes home when she heard a noise and awakened to find Bru-guier standing in her room. Bruguier asked T.S. why she was dating her boyfriend instead of him. T.S. testified that she told Bruguier to leave, but he hit her on the head and raped her.
Bruguier stipulated that he is an American Indian and that all alleged events occurred in Indian country.
II.
A.
Bruguier first argues that the jury instructions for his sexual abuse conviction under 18 U.S.C. § 2242(2) were erroneous both because they omitted a mens rea element of the offense and because they constructively amended the indictment. Because we find his mens rea argument dispositive, we need not address his constructive amendment argument. “[Although district courts exercise wide discretion in formulating jury instructions, when the refusal of a proffered instruction simultaneously denies a legal defense, the correct standard of review is de novo.” United States v. Young, 613 F.3d 735, 744 (8th Cir.2010) (internal citation omitted). Thus, we review Bruguier’s jury instructions de novo, beginning with the language of the statute.
Section 2242 states in pertinent part:
Whoever, in the special, maritime and territorial jurisdiction of the United States ... knowingly—
(2) engages in a sexual act with another person if that other person is—
(A) incapable of appraising the nature of the conduct; or
(B) physically incapable of declining participation in, or communicating unwillingness to engage in, that sexual act;
or attempts to do so, shall be fined under this title and imprisoned for any term of years or for life.
§ 2242.
Bruguier contends section 2242(2) requires that the defendant have knowledge of the victim’s incapacity or inability to consent. To that end, Bruguier proposed a jury instruction that would have required the jury to find not only that he knowingly engaged in a sexual act with Strieker and that Strieker was incapable of consenting, but also “that James Bruguier knew that Crystal Strieker was physically incapable of declining participation in, or communicating unwillingness to engage in, that sexual act.” The district court rejected Bru-guier’s proposed instruction. Instead, the court construed the applicable elements of section 2242(2) as being (1) that “Bruguier did knowingly cause or attempt to cause Crystal Strieker to engage in a sexual act”; (2) “that Crystal Strieker was physically incapable of declining participation in and communicating unwillingness to engage in that sexual act”; (3) that Bruguier is an Indian; and (4) that the offense took place in Indian country.
■ The issue before us is whether “knowingly” in section 2242(2) requires only that Bruguier knowingly engaged in a sexual act with Strieker, or whether it also requires that Bruguier knew Strieker was “incapable of appraising the nature of the conduct” or “physically incapable of declining participation in, or communicating un *758 willingness to engage in, that sexual act.” § 2242(2). This is an. issue of first impression for this Court.[2]
“[Determining the mental state required for commission of a federal crime requires construction of the statute and ... inference of the intent of Congress.” Staples v. United States, 511 U.S. 600, 605, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994) (internal quotation marks omitted). “The language of the statute [is] the starting place in our inquiry....” Id. The Supreme Court has stated that courts “ordinarily read a phrase in a criminal statute that introduces the elements of a crime with the word ‘knowingly’ as applying that word to each element.” Flores-Figueroa v. United States, 556 U.S. 646, 652, 129 S.Ct. 1886, 173 L.Ed.2d 853 (2009).[3] Moreover, “offenses that require no mens rea generally are disfavored, and [the Supreme Court has] suggested that some indication of congressional intent, express or implied, is required to dispense with mens rea as an element of a crime.” Staples, 511 U.S. at 606, 114 S.Ct. 1793 (internal citation omitted). Thus, pursuant to Staples and Flores-Figueroa, there is a presumption that “knowingly” in section 2242(2) applies to the circumstances following the conjunction “if.” Reading section 2242(2) in “the manner in which the courts ordinarily interpret criminal statutes,” Flores-Figueroa, 556 U.S. at 652, 129 S.Ct. 1886, leads to the conclusion that section 2242(2) requires that Bruguier knew Strieker was “incapable of appraising the nature of the conduct” or “physically incapable of declining participation in, or communicating unwillingness to engage in, that sexual act,” § 2242(2).
We find no reason to depart from the ordinary approach that the Supreme Court articulated in Staples and Flores-Figueroa. The Supreme Court has explained that situations where the term “knowingly” does not apply to all elements that follow it “typically involve special contexts or ... background circumstances that call for such a reading.” Flores-Figueroa, 556 U.S. at 652, 129 S.Ct. 1886. Here, however, neither the “context” nor “background circumstances” lead to the conclusion that “knowingly” in section 2242(2) does not apply to the victim’s incapacity or inability to consent. In fact, the context and background circumstances further compel the conclusion that “knowingly” does apply to each element.
Section 2242(2) was passed into law as part of the Sexual Abuse Act of 1986 (“the Act”). See Sexual Abuse Act of 1986, Pub.L. No. 99-646, § 87, 100 Stat. 3592, 3620-24 (codified as amended at 18 U.S.C. *759 § 2241-44, 2246). In addition to section 2242(2), the Act included two other statutes that use the term “knowingly” and then specify circumstances under which it would be illegal for a defendant to “engage[] in a sexual act.”[4] See 100 Stat. 3620-21. The first statute, codified at 18 U.S.C. § 2241(c), makes it illegal for a defendant to “knowingly engage[ ] in. a sexual act with another person who has not attained the. age of 12 years.” The second statute, codified at 18 U.S.C. § 2243(a), specifies:
(a) ,Of a minor.. — Whoever, in the special maritime and territorial jurisdiction of the United States ... knowingly engages in a sexual act with another person who—
(1) has attained the age of '12 years but has not attained the age of 16 years; and
(2) is at least four years younger than the person so engaging;
or attempts to do so, shall be fined under this title, imprisoned not more than 15 years, or both.
A side-by-side comparison of sections 2241(c), 2242(2), and 2243(a) illustrates the similarity between these three statutes and their comparable linguistic structure:
§ 2241(c)_§ 2242(2)_§ 2243_
Whoever, in the special maritime and territorial jurisdiction of the United States. . . knowingly_knowingly — . . ._knowingly__ _engages in a sexual act with another person_
who has not attained the age of 12 years. . .
if that other person is—
(A) incapable of appraising the nature of the conduct; or.
(B) physically incapable of declining participation in, or communicating unwillingness _to engage in, that sexual act; or attempts to do so, shall be [subject to differing punishments!.
who—
(1) has attained the age of 12 years but has not attained the age of 16 years; and
(2) is at least four years younger than the person so engaging;
§ 2241(c); § 2242(2); § 2243(a).
Significantly, both section 2241 and section 2243 include provisions that explicitly narrow the mens rea requirement. Section 2241 specifies that “the Government need not prove that the defendant knew that the other person engaging in the sexual act had not attained the age of 12 years.” § 2241(d). Section 2243 provides:
(d) State of Mind Proof Requirement. — In a prosecution under subsection (a) of this section, the Government need not prove that the defendant knew—
(1) the age of the other person engaging in the sexual act; or
(2) that the requisite age difference existed between the persons so engaging.
§ 2243(d). Section 2242, however, contains no affirmative language relieving the government of its burden to prove the defendant’s knowledge. See § 2242.
The Supreme Court has recognized a general rule of statutory construction that “[wjhere Congress includes particular language in one section of a statute but *760 omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.” Rodriguez v. United States, 480 U.S. 522, 525, 107 S.Ct. 1391, 94 L.Ed.2d 533 (1987) (internal quotation and alteration marks omitted). Here, all three statutes included in the same Act make it illegal for a defendant to “knowingly” engage in certain “sexual act[s].” Sections 2241 and 2243 explicitly limit the application of “knowingly,” while section 2242 does not. Thus, reading section 2242(2) in the broader context of the Act, and applying Rodriguez’s presumption that “disparate inclusion or exclusion” of statutory language is intentional, Rodriguez, 480 U.S. at 525, 107 S.Ct. 1391, reinforces the conclusion that “knowingly” in section 2242(2) applies to the victim-incapacity element of the offense.[5] See also Holder v. Humanitarian Law Project, 561 U.S. 1, 130 S.Ct. 2705, 2717-18, 177 L.Ed.2d 355 (2010) (rejecting interpretation of statute as “untenable in light of the sections immediately surrounding” it because “Congress did not import the intent language of those provisions” into the statute at issue); Hui v. Castaneda, 559 U.S. 799, 807, 130 S.Ct. 1845, 176 L.Ed.2d 703 (2010) (noting that “explicit exception” in one statute was “powerful evidence” that similar statutes did not “imply such an exception”); Northcross v. Bd. of Educ., 412 U.S. 427, 428, 93 S.Ct. 2201, 37 L.Ed.2d 48 (1973) (noting that “similarity of language” in two different statutes was “strong indication that the two statutes should be interpreted” the same).
Moreover, interpreting the knowledge requirement in section 2242(2) to extend only to knowledge of the sexual act would raise interpretive concerns with sections 2241 and 2243. As discussed above, Rodriguez instructs that sections 2241(c), 2242(2), and 2243(a) should be read together. If section 2242(2)’s knowledge requirement were construed to- apply only to knowledge of the sexual act, then this same construction logically should apply to the knowledge requirement in sections 2241(c) and 2243(a). Doing so, however, would render superfluous sections 2241(d) and 2243(d), both of which explicitly narrow the respective statutes’ knowledge requirements. This would run afoul of “the cardinal principle of statutory construction that it is our duty to give effect, if possible, to every clause and word of a statute.” Bennett v. Spear, 520 U.S. 154, 173, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997) (internal quotation and alteration marks omitted); cf. Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 58, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007) (recognizing “the interpretive assumption that Congress knows how we construe statutes and expects us to run true to form”); Albernaz v. United States, 450 U.S. 333, 341, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981) (“Congress is predominately a lawyer’s body, and it is appropriate for us to assume that our elected representatives know the law.” (internal quotation marks, alteration marks, and citations omitted)).
In summary, Staples and Flores-Figueroa create a presumption that “knowingly” in section 2242(2) requires a defendant to know the victim was “incapable of appraising the nature of the conduct” or “physically incapable of declining participation in, *761 or communicating unwillingness to engage in, that sexual act,” § 2242(2). See Flores-Figueroa, 556 U.S. at 652, 129 S.Ct. 1886; Staples, 511 U.S. at 606, 114 S.Ct. 1793. Flores-Figueroa instructs that this presumption can be rebutted where the “context” or “background circumstances” of a statute lead to a different reading. See Flores-Figueroa, 556 U.S. at 652, 129 S.Ct. 1886. Here, however, looking at the broader statutory context reinforces this presumption. Sections 2241 and 2243, passed into law as part of the same Act, include provisions explicitly limiting those statutes’ mens rea requirements, and we presume that Congress intentionally omitted similar limiting language from section 2242. See Humanitarian Law Project, 130 S.Ct. at 2717-18; Hui, 559 U.S. at 807, 130 S.Ct. 1845; Rodriguez, 480 U.S. at 525, 107 S.Ct. 1391. Moreover, adopting a narrower construction of the knowledge requirement in section 2242(2) would create interpretative problems with sections 2241 and 2243, since it would render superfluous the provisions. of those two statutes that place limits on the reach of “knowingly.” See Bennett, 520 U.S. at 173, 117 S.Ct. 1154. Thus, looking at the language of the statute and applying settled rules of statutory construction compels the conclusion that “knowingly” in section 2242(2) applies to each element of the offense.
Although the above analysis conclusively resolves the question before us, we note that other rules of statutory construction would lead to the same conclusion. It is a “familiar principle that ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity.” Skilling v. United States, 561 U.S. 358, 130 S.Ct. 2896, 2932, 177 L.Ed.2d 619 (2010) (internal quotation marks omitted). Moreover, the Supreme Court has stated that “where, as here, dispensing with mens rea would require the defendant to have knowledge only of traditionally lawful conduct, a severe penalty is a further factor tending to suggest that Congress did not intend to eliminate a mens rea requirement.” Staples, 511 U.S. at 618-19, 114 S.Ct. 1793. Knowingly “engaging] in a sexual act with another person,” § 2242(2), is not inherently criminal under federal law, barring some other attendant circumstance. Defendants convicted under section 2242(2) are subject to “imprison[ment] for any term of years or for life.” Id. Thus, even if the rules of statutory construction discussed above left any doubt about the reach of “knowingly” in section 2242(2), the rule of lenity and the potentially harsh penálty of life imprisonment would tip the balance in favor of construing “knowingly” to apply to the victim-incapacity element of the statute.
Furthermore, while we do not base our conclusion regarding the statute’s construction on legislative history, we note that the legislative history also leads to the same construction; The House Report issued by the Judiciary Committee stated that the purpose of the Sexual Abuse Act of 1986 was to “modernize and reform Federal rape statutes.” H.R.Rep. No. 99-594, at 6 (1986). In discussing the provisions of sections 2241 and 2243 that explicitly limit those sections’ knowledge requirements, the House Report states that without these provisions, “the government would have had to prove that the defendant knew that a victim was less than 12 years old, since the state of mind required for the conduct — knowing—is also required for the circumstance of the victim’s age.” Id. at 15 n. 59 (discussing knowledge requirement in section 2241); see also id. at 18 n. 69 (discussing knowledge requirement in section 2243 and referencing footnote 59). The House Report shows that Congress understood the knowledge requirement in sections 2241 and 2243 to *762 attach, absent a limiting provision, to the circumstance of the victim’s age. Notably, although Congress drafted the statutes “broadly to cover the widest possible variety of sexual abuse,” id. at 12, Congress did not mention that it intended to make section 2242(2) a strict liability crime, nor did it draft provisions limiting the reach of “knowingly” in section 2242(2). In short, the legislative history shows that Congress understood the knowledge requirement in section 2242(2) to attach to the victim’s incapacity dr inability to consent.
The dissent objects to this opinion on three principal grounds: its take on the best grammatical reading of section 2242(2); its view of public policy; and the novel assertion that cases in which the issue before us was not raised, argued, discussed, or decided should inform our analysis. None of these bases withstand fair examination.
First, the dissent offers its own reading of section 2242(2) and concludes that under the structure of the statute “ ‘knowingly’ belongs to and modifies [only] the words ‘engages’ and ‘attempts.’ ” See post at 776. This analysis begins with error because the dissent fails to acknowledge the Supreme Court’s most recent articulation of the relevant rules of statutory construction in Flores-Figueroa which requires us to presume that the mens rea that introduces the elements of a crime applies to each element. See Flores-Figueroa, 556 U.S. at 652, 129 S.Ct. 1886; id. at 660, 129 S.Ct. 1886 (Alito, J., concurring) (“I think it is fair to begin with a general presumption that the specified mens rea applies to all the elements of an offense, but it must be recognized that there are instances in which context may well rebut that presumption.”). Furthermore, instead of interpreting the statutory text in the manner prescribed by the Supreme Court, the dissent misreads the majority’s opinion as “addfing] an element of the offense that is not indicated by the congressional text.” See post at 777. This is simply not the case. We are not adding a mens rea requirement where one is not found; rather we are following the instruction of the Supreme Court and presuming the mens rea requirement found in the congressional text “applfies] ... to each element” that follows because that presumption is not rebutted. See Flores-Figueroa, 556 U.S. at 652, 129 S.Ct. 1886.
The dissent further argues that this opinion is “inconsistent with the policies identified in the principal legislative report concerning the Sexual Abuse Act of 1986.” See post at 781. Specifically, the dissent focuses on studies discussing the frequency of sexual abuse suffered by Native American women and on the number of cases this court and district courts in this circuit have addressed under section 2242(2). No one could be unsympathetic to the circumstances addressed in the legislative report or in individual prosecutions. However, individual public policy judgments are no substitute for the rule of law and the statutory language that, under the directions of Flores-Figueroa and Staples, mandate us to presume the knowledge mens rea applies to all of the elements of section 2242(2). See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (holding when “the intent of Congress is clear [from the statutory text], that is the end of. the matter”).
Third, the dissent refers to unidentified district court cases along with selected appeals to our court involving defendants accused of violating section 2242(2) as supporting “a longstanding assumption” and an “accepted understanding” that the knowledge requirement of section 2242(2) does not apply to the victim’s incapacity. As acknowledged by the dissent, however, *763 the issue before us was not argued or decided in these cases, and thus, it is axiomatic that they provide absolutely no support for the dissent’s position. See United States v. L.A. Tucker Truck Lines, Inc., 344 U.S. 33, 37-38, 73 S.Ct. 67, 97 L.Ed. 54 (1952) (stating that a prior decision’s implicit resolution of an issue that was not “raised in briefs or argument nor discussed in the opinion of the Court” is “not a binding precedent”); Webster v. Fall, 266 U.S. 507, 511, 45 S.Ct. 148, 69 L.Ed. 411 (1925) (“Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.”); Streu v. Dormire, 557 F.3d 960, 964 (8th Cir.2009) (“[W]e are generally not bound by a prior panel’s implicit resolution of an issue that was neither raised by the parties nor discussed by the panel.”).
Finally, we recognize that “sex crimes committed against the vulnerable, such as an unconscious or intoxicated individual, are particularly egregious and dehumanizing.” United States v. Riley, 183 F.3d 1155, 1160 (9th Cir.1999). The harm experienced by victims is not alleviated where assailants are acquitted based on claims that they did not know the victims were incapacitated. However, “the presumption in favor of a scienter requirement should apply to each of the statutory elements that criminalize otherwise innocent conduct.” X-Citement Video, 513 U.S. at 72, 115 S.Ct. 464. Furthermore, reading section 2242(2) in the broader context of the Sexual Abuse Act of 1986 reinforces this presumption and compels the conclusion that section 2242(2) requires the government to prove that a defendant not only knew he or she was “engag[ing] in a sexual act with another person,” but also that the defendant knew the other person was “incapable of appraising the nature of the conduct” or “physically incapable of declining participation in, or communicating unwillingness to engage in, that sexual act.” § 2242(2). Even if we harbored doubt about this construction due to the egregious nature of sexual abuse crimes, which we do not, the rule of lenity, the harsh penalties associated with the offense, and the legislative history would all tip the balance in favor of this construction.
Thus, upon de novo review, we conclude that the district court’s failure to give Bru-guier’s instruction deprived him of his defense that he did not know Strieker was incapacitated or otherwise unable to deny consent. Consequently, we reverse his conviction under section 2242(2) and remand for a new trial on'this count.
B.
Bruguier next argues the evidence was insufficient to convict him of burglary under S.D. Codified Laws § 22-32-1. He preserved this issue by moving for a judgment of acquittal. See United States v. May, 476 F.3d 638, 640 (8th Cir.2007). Thus, “[w]e review the sufficiency of the evidence de novo, viewing evidence in the light most favorable to the government, resolving conflicts in the government’s favor, and accepting all reasonable inferences that support the verdict.” United States v. Gray, 700 F.3d 377, 378 (8th Cir.2012) (internal quotation marks omitted). “We reverse only if no reasonable jury could have found guilt beyond a reasonable doubt.” Id. (internal quotation marks omitted).
The only argument Bruguier advances concerning his burglary conviction is that the evidence was insufficient to prove he entered or remained in T.S.’s home with the specific intent to commit sexual assault. See § 22-32-1 (establishing elements of first degree burglary). He asserts that the evidence, at best, showed *764 he acted on impulse when he assaulted T.S., not that he ever formed the specific intent to rape her. However, T.S. testified that Bruguier entered her room while she was sleeping, asked her why she was dating her boyfriend instead of him, and then hit her on the head before raping her. Viewed in the light most favorable to the government, this evidence certainly was sufficient for a reasonable jury to infer that Bruguier entered or remained in T.S.’s home with the specific intent to commit sexual assault. See State v. Martin, 498 N.W.2d 223, 228-29 (S.D.1992). (upholding jury’s factual determination that defendant possessed specific intent to support burglary conviction). Thus, we affirm Bruguier’s burglary conviction.
C.
Bruguier lastly challenges his sentence, arguing the district court incorrectly calculated his sentencing guideline range. We need not reach his sentencing arguments, however. Because the district court based its sentencing package on all four of Bruguier’s convictions, one of which we are reversing, we vacate his sentence and remand for re-sentencing. Cf. United States v. Evans, 314 F.3d 329, 332 (8th Cir.2002) (“Under the Guidelines, a multicount sentence is a package and severing part of the total sentence usually will unbundle it.” (internal quotation marks omitted)).
III.
Accordingly, we reverse Bruguier’s conviction for sexual abuse under section 2242(2) and remand for a new trial on that count. We consequently vacate his sentence and remand for re-sentencing. We affirm his burglary conviction.

. All of these offenses are covered by 18 U.S.C. § 1153 as offenses committed within *756 Indian country. The term "sexual act” for purposes of these convictions is defined in 18 U.S.C. § 2246(2).

. In United States v. Betone, 636 F.3d 384 (8th Cir.2011), we addressed a sufficiency of the evidence challenge under section 2242(2). Pointing to the male victim's testimony that the defendant began fellating him while he was asleep, we concluded that the victim's "testimony alone established] the elements of § 2242(2).” Id. at 387. We noted that "[o]nly [the defendant] testified that [the victim] was awake when oral sex began” and that "the jury evidently credited [the victim] over [the defendant].” Id. Thus, while the Betone court found the evidence sufficient to support all elements of a section 2242(2) conviction, it did not address the more discrete legal issue that Bruguier raises: whether "knowingly” in section 2242(2) requires a defendant to have knowledge of a victim’s incapacity or inability to grant consent.

. Flores-Figueroa relied heavily on the Supreme Court’s earlier decisions in United States v. X-Citement Video, Inc., 513 U.S. 64, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994) and Liparota v. United States, 471 U.S. 419, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985). See Flores-Figueroa, 556 U.S. at 652-53, 129 S.Ct. 1886. X-Citement Video involved a statute that, like section 2242(2), had a dash between the term "knowingly” and some of the other elements. See X-Citement Video, 513 U.S. at 68, 115 S.Ct. 464.

. Congress has since amended the three statutes in ways not relevant to this case. See, e.g., Adam Walsh Child Protection and Safety Act of 2006, Pub.L. No. 109-248, §§ 205-07, 120 Stat. 587, 613-15 (increasing penalties under each statute).

. It is true that section 2243 creates an affirmative defense for a defendant who "reasonably believed that the other person had attained the age of 16 years,” while section 2242(2) does not mention affirmative defenses. Compare § 2243(c), with § 2242(2). We do not find this distinction significant, however, in light of the fact that section 2241 does not mention affirmative defenses but still explicitly limits the mens rea requirement. See § 2241.