# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-1455

_____

United States of America

*Plaintiff - Appellee*

v.

Tang (Janny) Nguyen

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Nebraska - Lincoln

_____

Submitted: March 24, 2014
Filed: July 15, 2014

_____

Before LOKEN, BYE, and BENTON, Circuit Judges.

_____

LOKEN, Circuit Judge.

Tang (Janny) Nguyen and five others were charged with various offenses after they imported from Vietnam and sold in Nebraska thousands of cigarettes without paying pertinent federal, state, and local taxes. The most culpable defendants pleaded guilty and agreed to cooperate. The case went to trial against Ms. Nguyen and a co-defendant, who was acquitted by the jury of all charges.

The multi-count indictment charged Ms. Nguyen with conspiracy to violate 18 U.S.C. §§ 545, 1341, 2342(a), and 26 U.S.C. §§ 5701(b) and 5762(c)(3); fraudulent importation of "contraband cigarettes"; evasion of federal cigarette taxes; and five counts of mail fraud. After a five-day trial, the jury acquitted her of those charges. In addition, Count VI alleged that Ms. Nguyen "did knowingly ship, transport, receive, possess, sell and distribute 'contraband cigarettes'" in violation of 18 U.S.C. § 2342(a) on or about March 22, 2012. The jury convicted Ms. Nguyen of that charge. She appeals, arguing the evidence was insufficient to convict her of knowingly trafficking in contraband cigarettes. We agree and therefore reverse.

## I.

In May 2011, an informant notified the County Sheriff's Office that a person later identified as Van Phan was selling Vietnamese cigarettes in Nebraska City, some fifty miles east of Lincoln, Nebraska. An extensive investigation revealed multiple packages from Vietnam addressed to locations in the Lincoln area, including the home of Ms. Nguyen and the nearby home of her sister, Kim Nguyen. From December 2011 to March 2012, Immigration and Customs Enforcement agents conducted five "border searches" of packages addressed to those homes, opening the packages, photographing and inventorying the Vietnamese cigarettes inside, and resealing the packages for postal delivery. At trial, ICE Agent Stewart testified that he also obtained a warrant and searched eleven packages addressed to Ms. Nguyen on April 4. Inside the packages were cartons and packs containing 11,680 Vietnamese cigarettes. None of the cigarette packs had a Nebraska cigarette tax stamp, which is required to lawfully sell cigarettes in that State. Neb. Rev. Stat. § 77-2606. The eleven packages were then delivered to Ms. Nguyen's home and were the basis for the Count VI offense. During the investigation, agents searched a total of twenty-eight packages addressed to Ms. Nguyen, all of which contained unstamped Vietnamese cigarettes.

On April 24, investigator Marlan Hohnstein interviewed Ms. Nguyen during a warrant search of her home after giving Miranda warnings in both English and Vietnamese. At trial, Hohnstein testified that Ms. Nguyen "acknowledged that there were many packages that had come to her residence . . . from Vietnam and she knew that they contained cigarettes." Ms. Nguyen admitted to signing for the delivery of some packages; many others arrived while she was at work. When packages arrived, Ms. Nguyen said "her job was to . . . get them to her sister Kim." Ms. Nguyen would call Kim and ask her to pick them up. She knew "Kim sold the cigarettes on the street." Her brother in Vietnam sent the packages, and during a visit to Vietnam she had once gone with him to seal and mail packages to the United States.

Kim Nguyen testified for the government pursuant to a plea agreement in which she agreed to cooperate. Kim testified that she began receiving shipments of untaxed cigarettes from relatives in Vietnam around March 2011. She did not have a license to import or sell the cigarettes and never paid federal or state cigarette taxes. Early on, Kim asked if she could "borrow [Ms. Nguyen's] address so cigarette[s] can be sent to her address and she agree[d]." Kim told Ms. Nguyen that the packages contained cigarettes. Relatives in Vietnam mailed two or three packages to Kim and Ms. Nguyen every one to three weeks. The packages contained six cartons of cigarettes. Kim sold some of the cigarettes herself, sending the profits back to relatives in Vietnam, and gave cigarettes to Hoa Van Huynh and Teo Van Phan, two resellers who also pleaded guilty and testified for the government at trial.

Kim testified that she picked up packages delivered to Ms. Nguyen's home. Kim did not pay Ms. Nguyen for receiving the packages of cigarettes. Ms. Nguyen did not sell any cigarettes but knew that money from sales of the cigarettes was sent to their brother in Vietnam. Kim did not discuss with Ms. Nguyen that the cigarettes coming from Vietnam "were not taxed by the United States." At one point Ms. Nguyen "scream[ed]" at Kim to "stop sending to my address."

## II.

Ms. Nguyen was convicted of violating 18 U.S.C. § 2342(a), which provides: "It shall be unlawful for any person knowingly to ship, transport, receive, possess, sell, distribute, or purchase contraband cigarettes or contraband smokeless tobacco." "Contraband cigarettes," an element of the offense, is defined in § 2341(2):

> (2) the term "contraband cigarettes" means a quantity in excess of 10,000 cigarettes, which bear no evidence of the payment of applicable State or local cigarette taxes in the State or locality where such cigarettes are found, if the state or local government requires a stamp, impression, or other indication to be placed on packages or other containers of cigarettes to evidence payment of cigarette taxes, and which are in the possession of any person other than [one who holds under proper authorization].

At trial, the government proved that more than 10,000 Vietnamese cigarettes bearing no evidence of the payment of applicable Nebraska cigarette taxes were received and sold in Nebraska by one or more persons who were not authorized to receive and sell them. The fighting issue was whether Ms. Nguyen knowingly violated § 2342(a).

Prior to and during trial, defense counsel requested a jury instruction that a violation of § 2342(a) "requires proof of specific intent," that is, proof that Ms. Nguyen "knowingly did an act which the law forbids, purposely intending to violate the law." The district court denied this request, explaining that it agreed with the Sixth Circuit that the Supreme Court's decision in United States v. Liparota, 471 U.S. 419 (1985), adopting a specific intent requirement for knowing violations of the federal food stamp fraud offense, does not apply to knowing violations of § 2342(a). United States v. Elshenawy, 801 F.2d 856, 859 (6th Cir. 1986), cert. denied, 479 U.S. 1094 (1987), followed in United States v. Baker, 63 F.3d 1478, 1491-93 (9th Cir. 1995), cert. denied, 516 U.S. 1097 and 516 U.S. 1117 (1996).

We agree that § 2342(a) is not a specific intent statute, but that does not resolve the question of what the government must prove to establish a "knowing" violation. On this question, the record and appellate briefs are silent, but the Supreme Court has provided substantial guidance:

> [T]he term "knowingly" does not necessarily have any reference to a culpable state of mind or knowledge of the law. As Justice Jackson correctly observed, "the knowledge requisite to knowing violation of a statute is factual knowledge as distinguished from knowledge of the law." . . . Thus, unless the text of the statute dictates a different result [as in Liparota], the term "knowingly" merely requires proof of knowledge of the facts that constitute the offense.

Bryan v. United States, 524 U.S. 184, 192-93 (1998) (citations omitted). This was not an issue in Elshenawy, because the defendant conditionally pleaded guilty to violating § 2342(a), admitted "he knew that the cigarettes in his possession bore no indicia and . . . assumed that no state taxes had been paid," and appealed the district court's ruling that the government need not prove knowledge of the state taxing requirement. 801 F.2d at 857.

When a criminal statute introduces the elements of a crime with the word "knowingly," we apply that word to each element of the crime unless special context or background calls for a different reading. United States v. Bruguier, 735 F.3d 754, 758 (8th Cir. 2013) (en banc). Thus, the district court properly instructed the jury that the government must prove beyond a reasonable doubt that Ms. Nguyen knowingly (i) trafficked in more than 10,000 cigarettes that (ii) "bore no evidence of the payment of applicable State or local cigarette taxes." However, in denying Ms. Nguyen's post-verdict motion for judgment of acquittal, the court lost sight of the second half of this instruction, which properly focused on whether the cigarettes "bore evidence" that applicable taxes had been paid, as § 2341(2) required. Instead, the court concluded, Ms. Nguyen's admissions to investigator Hohnstein that she knew packages mailed

to her contained cigarettes, signed for some of the packages, and left them for Kim to pick up "is certainly sufficient to support the jury's determination that the defendant knowingly possessed contraband cigarettes."

On appeal, Ms. Nguyen argues, as she did to the district court, that "there is no evidence in the record that [Ms. Nguyen] was aware of any applicable sales taxes on the cigarettes. This was a fact that the actual importer, Kim Nguyen, did not discuss with her." The government's brief responded, citing page 373 of the trial transcript: "Nguyen informed Deputy Hohnstein she knew her brother and nephew were sending packages from Vietnam to her and her sister and that the packages contained *untaxed* Vietnamese cigarettes." (Emphasis added.) This is an inexcusable misstatement of the trial record. At pages 373-75, Hohnstein testified:

Q. What did she tell you regarding the packages that had come to her residence from Vietnam?

A. She acknowledged that there were many packages that had come to her residence that came from Vietnam and she knew that they contained cigarettes.

*    *    *    *    *

Q. What did she say to you regarding who she identified as the sender of those packages?

A. She told me that her brother had sent them from Vietnam.

*    *    *    *    *

Q. What did she tell you with regard to her understanding of the process for the packages mailed from Vietnam to her address?

A. She told me that she was actually with her brother at a time when those packages had been sent from Vietnam. They would take them to

the post office in Vietnam and present the packages, a person there would look at the packages and then they would be sealed up and sent away.

$$* \quad * \quad * \quad * \quad *$$

Q. What did she tell you regarding the packages mailed to her sister?

A. She said that she knew her sister Kim had received the same kind of packages, boxes with cartons of cigarettes in them.

This was the only evidence in the government's fifteen-witness case regarding Ms. Nguyen's knowledge of whether the cigarettes received at her home from Vietnam "bore no evidence of the payment of applicable State or local cigarette taxes."[1] Contrast this lack of proof with the substantial evidence suggesting the need for affirmative proof on this issue: (1) The packages arriving from Vietnam bore no outward sign that they contained cigarettes. Investigating agents had to open the packages and remove individual cigarette packs from their cartons to determine the packs bore no Nebraska tax stamp. (2) There was no evidence Ms. Nguyen ever opened a package received at her home. She left the packages on her kitchen table for Kim to pick up. (3) The warrant search of Ms. Nguyen's home uncovered no evidence that any box was opened at her home. No one testified that Ms. Nguyen ever possessed or even saw an individual pack of untaxed cigarettes after it arrived from Vietnam in Nebraska. (4) There was no evidence Ms. Nguyen ever sold or distributed the cigarettes, or profited from their distribution. She just delivered packages received at her home from Vietnam, unopened, to her sister.

Our review of this evidence persuades us that the government simply failed to prove a knowing violation of § 2342(a). There was sufficient evidence she

---

[1]The government did not include any of its 636 trial exhibits in the record on appeal, leaving us to infer their contents and appearance from witness testimony.

knowingly received the packages,[2] but not that she knowingly received "contraband cigarettes" hidden inside the packages. This might have been sufficient to convict Ms. Nguyen of conspiracy to violate § 2342(a), but the jury acquitted her of that more serious offense. It is not unreasonable that Ms. Nguyen knew that the cigarettes delivered to her home for her sister to distribute "bore no evidence of the payment of applicable State or local cigarette taxes" and therefore had sufficient "knowledge of the facts that constitute the offense," Bryan, 524 U.S. at 193. But speculation will not take the place of proof. The government had ample opportunity to prove that fact, for example, through better questioning of Ms. Nguyen by Deputy Hohnstein, better questioning of cooperating witness Kim at trial, or presenting testimony by Ms. Nguyen's son. It did not do so. And its closing argument to the jury simply ignored this element of the offense -- knowingly trafficking in "contraband cigarettes" *as defined in the statute* -- telling the jury it should convict because Ms. Nguyen "knowingly received those cigarettes. Those cigarettes were more than 10,000 cigarettes and those cigarettes bore no tax stamp." By telling the jury that the word "knowingly" in § 2342(a) did not apply to the "bear no evidence" element of the offense, the government committed the same error that required reversal in Bruguier, 735 F.3d at 757-58, 763. But there is one important difference. In this case, the jury was properly instructed; the government simply ignored those instructions.

This is not an easy issue because of our overriding obligation to give proper deference to the jury verdict. We review the sufficiency of the evidence *de novo*, but we must "view[] the evidence in the light most favorable to the verdict and draw[] all reasonable inferences in its favor." United States v. Vore, 743 F.3d 1175, 1180 (8th

---

[2]The parties briefed this case as though § 2342(a) prohibits only unlawful possession of contraband cigarettes. But the statute is directed at unlawful trafficking and therefore prohibits acts beyond actual or constructive possession. In this case, for example, the evidence was sufficient to prove that Ms. Nguyen knowingly "received" the packages, even if she did not sign for them and was not present when they were delivered and picked up by sister Kim.

Cir. 2014). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). Here, having thoroughly reviewed the record on appeal in that manner, we conclude that, in a lengthy trial focused primarily on other issues, the government failed to perceive what was needed to prove that Ms. Nguyen knowingly trafficked in contraband cigarettes and, in highlighting for the jury what it did prove, misled a properly instructed and otherwise rational jury into convicting Ms. Nguyen of a crime the government had failed to prove. Thus, the verdict convicting Ms. Nguyen of Count VI must be overturned. In addition, as this was a failure of proof at a trial in which the government had fair opportunity "to offer whatever proof it could assemble," the Double Jeopardy Clause requires entry of judgment of acquittal, rather than grant of a new trial. Burks v. United States, 437 U.S. 1, 16-17 (1978).

The judgment of the district court is reversed.

_____